Stephen **KALUCZKY**, Plaintiff–Appellee,

v.

**CITY OF WHITE PLAINS, and the City of White Plains, New York, Defendant,**

**Kevin D. Fish, individually and as Executive Officer for the City of White Plains, Sy Schulman, individually and as Mayor of the City of White Plains, and Timothy Dolph, individually and as Senior Personnel Assistant, Defendants–Appellants.**

No. 1177, Docket 94–7827.

United States Court of Appeals, Second Circuit.

Argued March 22, 1995.

Decided June 8, 1995.

---

Bertrand B. Pogrebin, Rains & Pogrebin, P.C., Mineola, NY, (Richard G. Kass, of counsel), for defendants-appellants.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for plaintiff-appellee.

Before: McLAUGHLIN and JACOBS, Circuit Judges, and KAUFMAN, Senior District Judge.*

JACOBS, Circuit Judge:

Stephen Kaluczky is the Personnel Officer for the City of White Plains ("the City"), a six-year appointive post. A registered Republican, Kaluczky was re-appointed for a second six-year term in 1992, the last year of a Republican administration. Defendants are three White Plains officials who came into power on the Democratic ticket in 1993. Kaluczky alleges that these Democratic office-holders have retaliated against Kaluczky for his political views, his party affiliation, and certain testimony that Kaluczky gave (during his first term) at a disciplinary hearing that ended in the dismissal of a Democrat, all in violation of Kaluczky's First and Fourteenth Amendment rights protected by 42 U.S.C. § 1983. Defendants Kevin Fish, who is the Executive Officer of White Plains,

* The Hon. Frank A. Kaufman of the United States District Court for the District of Maryland, sitting by designation.

Mayor Sy Schulman, and Timothy Dolph, the City's Senior Personnel Assistant, moved to dismiss the complaint on the grounds that they have qualified immunity; that plaintiff, as a confidential, policymaking employee, enjoys no First Amendment protection from adverse treatment by political adversaries; and that the district court should not exercise its discretion to hear the allegedly meritless pendent state claims. These defendants appeal from an oral order of the District Court for the Southern District of New York (Brieant, *J.*) denying their motion. The City of White Plains appears to have moved for dismissal; however, the City's claim is not before us because we have jurisdiction only to consider the individual defendants' motion for qualified immunity.

## I. Background

Stephen Kaluczky was first appointed Personnel Officer for the City of White Plains by Republican Mayor Alfred Del Vecchio in 1986. The position of Personnel Officer carries a statutory six-year term of office. *See* N.Y.Civ.Serv.Law § 15; *see also* White Plains City Charter § 238–g. Since the mayoralty is a four-year elective post, a Personnel Officer will sometimes serve with the mayor of a rival party.

The following recitation of facts is drawn from plaintiff's complaint and is assumed to be factually true for purposes of this appeal.

On November 13, 1990, Mayor Del Vecchio was assaulted at a collective bargaining session by Joseph Roche, who was then President of the local chapter of the Civil Service Employees Association's bargaining unit. Kaluczky witnessed the incident. Del Vecchio brought disciplinary charges against Roche, a Democrat active in city politics. Roche was subsequently brought before a disciplinary hearing. Kaluczky, who testified in part as an eye witness, went on to opine that Roche could be discharged for his misconduct and that Roche's prior partisan political activity had been improper. Kaluczky characterizes all of his testimony as "truthful". As a result of the hearings, Roche was fired.

In September 1992, Mayor Del Vecchio reappointed Kaluczky subject to confirmation by the White Plains Common Council. At the time, the Common Council was controlled by the Democrats who hoped to delay Kaluczky's confirmation proceedings until after the 1993 mayoral elections. However, Kaluczky was automatically confirmed as Personnel Officer in October 1992, because of a technical procedural rule that the Democrats had overlooked.

Defendant Sy Schulman, a long-time Democratic member of the Common Council, opposed Del Vecchio in the 1993 mayoral election. Kaluczky, a registered Republican who had not previously been active in local elections, actively endorsed Del Vecchio's candidacy, stuffing envelopes with campaign literature and writing personal notes urging voters to re-elect the mayor.

Schulman defeated Del Vecchio in the November election, and took office in January 1994. Roche, who remained active in Democratic politics after being fired by the Del Vecchio administration, was given a job in the Schulman administration.

Soon after the 1993 election, Mayor Schulman requested that Kaluczky resign so that Schulman could appoint one of his political colleagues as Personnel Officer. When Kaluczky refused, Schulman and the other defendants took measures to induce his resignation. Specifically, Kaluczky alleges that the defendants curtailed many of his professional responsibilities: by threatening to transfer his duties to other departments; by actually transferring many of his responsibilities to defendant Dolph, one of Schulman's loyal subordinates; and by excluding him from "making personnel decisions", "attending cabinet level meetings", conducting city labor negotiations, and "determining personnel practices and policies". Second, Kaluczky alleges that the defendants humiliated him and isolated him politically by denying Kaluczky access to the mayor; refusing to speak with him in public; turning away when Kaluczky addressed them; refusing to return Kaluczky's phone calls; excluding Kaluczky from various strategy meetings, high level committees, and weekend retreats; and verbally assaulting him for his political affiliation and his political support for Del Vecchio.

Fish threatened to make Kaluczky "go through hell" if he refused to resign. Last, the defendants threatened to freeze Kaluczky's pay.

Notwithstanding all this, Kaluczky has retained his statutory position and the perquisites of his office. In May 1994, after this lawsuit was commenced, he was given a 2.54% raise.

Kaluczky's complaint, filed on April 24, 1994, asserts five federal claims: (1) that defendants retaliated against plaintiff for his political affiliation in violation of the First and Fourteenth Amendments; (2) that defendants retaliated against plaintiff for the exercise of his right to associate with Del Vecchio in violation of the First and Fourteenth Amendments; (3) that defendants retaliated against plaintiff for his political support of Del Vecchio's campaign in violation of the First and Fourteenth Amendments; (4) that defendants retaliated against plaintiff for having given "truthful" testimony (at the Roche hearing) on matters of a public concern, in violation of the First and Fourteenth Amendments; and (5) that defendants unlawfully "chilled" plaintiff's exercise of his First and Fourteenth Amendment rights. Kaluczky also pleaded a pendent state claim alleging that the defendants' retaliatory conduct violated the "rights and obligations" of his office in violation of § 238–g of the White Plains City Charter, the New York State Civil Service Law and Article V, § 6 of the New York State Constitution. The complaint seeks compensatory and punitive damages as well as declaratory and injunctive relief.

On June 23, 1994, defendants moved to dismiss the complaint on the ground that policymaking employees (such as Kaluczky) are not protected from rough treatment when they exercise their First Amendment rights; that the defendants have qualified immunity from personal liability; and that the state law claims, being meritless, do not justify the exercise of discretion required to hear them. On July 29, following oral argument, Judge Brieant denied the motion without issuing a written opinion. The defendants took a timely appeal of the district court's denial of their claim of qualified immunity.

## II. Discussion

The motion for qualified immunity was presented under Rule 12(b)(6). In reviewing a complaint under that Rule, we accept as true the material facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. *See Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir.1995). To prevail on appeal, defendants must carry the burden of showing that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir.), *cert. denied*, 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). This cautionary standard applies with greater force where the plaintiff alleges civil rights violations. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994).

### A. Subject Matter Jurisdiction

An order denying a motion to dismiss on the ground of qualified immunity is immediately appealable where the district court has rejected that defense as a matter of law. *See Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); *Hill*, 45 F.3d at 659–60. If defendants' immunity defense depends on disputed factual issues, appellate review must await the resolution of those issues at trial. *See Hill*, 45 F.3d at 660; *DiMarco v. Rome Hosp.*, 952 F.2d 661, 665 (2d Cir.1992). Thus, we have appellate jurisdiction to consider the immunity defense only to the extent that the issue can be decided as a matter of law.

An appellate court having jurisdiction over some questions on appeal may exercise its discretion to take pendent jurisdiction over independent nonappealable, but related questions. *See Golino v. City of New Haven*, 950 F.2d 864, 868–69 (2d Cir.1991), *cert. de-*

*nied,* —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992); *San Filippo v. United States Trust Co.,* 737 F.2d 246, 255 (2d Cir. 1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). The Supreme Court has recently cautioned that, on an interlocutory appeal from an order rejecting a claim of qualified immunity, a claim involving a "pendent party" is an "unrelated question" that cannot be resolved under pendent jurisdiction. *See Swint v. Chambers County Comm'n,* —— U.S. ——, ——, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995). However, the Court did not otherwise narrow the scope of pendent jurisdiction, and appeared to contemplate pendent appellate jurisdiction over an independent but related question that is "inextricably intertwined" with the issue of qualified immunity or is "necessary to ensure meaningful review" of that issue. *Id.*

■ The defendants ask this Court to exercise pendent jurisdiction in order to decide whether Kaluczky's status as a confidential policymaking employee bars his invocation of First Amendment rights in the circumstances presented and whether Kaluczky's six-year term of office affords him additional First Amendment protection. The immunity question turns on whether it was objectively reasonable for the defendants to believe that their conduct violated Kaluczky's clearly established constitutional rights. That question entails an inquiry into the nature and extent of the rights that Kaluczky can assert, and whether Kaluczky's entitlement is well-settled. In our view these issues are "inextricably intertwined". We therefore conclude that there is "sufficient overlap in the factors relevant to the appealable and nonappealable issues to warrant our exercising plenary authority over the appeal." *San Filippo,* 737 F.2d at 255 (internal quotes and brackets omitted).

B. *Qualified Immunity*

■ In a § 1983 action, it is well-settled that qualified immunity shields a defendant from personal liability for damages so long as his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Davis v. Scherer,* 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984) (applying standard to § 1983 action). Even where a right is clearly established, a defendant may enjoy immunity if it was objectively reasonable for the official to believe that his acts did not violate that right. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993). In order to determine whether a particular right was clearly established at the time the defendant acted, a court should consider:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

Kaluczky alleges that defendants violated well-established rights of speech and association by conducting a campaign to force his resignation. We review below the cases establishing that a public employee in a confidential policymaking position has no First Amendment protection from being discharged for his political beliefs, his party affiliation or his political statements. Kaluczky, however, claims that this policymaker exception is inapplicable because he was appointed to a six-year term of office, and because policymaking has nothing to do with his truthful testimony at the Roche disciplinary hearing. We address each of these claims below; as that discussion will make clear, each claim raises a novel issue. It follows that the "contours" of the right alleged to have been violated were not "sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Therefore, we hold that the

defendants are entitled to immunity from suit in their personal capacity.

### C. First Amendment

 *Policymaker Doctrine.* As a general rule, public employees may not be dismissed for the exercise of their First Amendment rights. *See Elrod v. Burns,* 427 U.S. 347, 360, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976). However, political affiliation and political viewpoint are permissible employment criteria for positions involving "policy-making and confidential employees". *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 71 n. 5, 110 S.Ct. 2729, 2735 n. 5, 111 L.Ed.2d 52 (1990); *see also Elrod,* 427 U.S. at 367, 96 S.Ct. at 2686; *Branti v. Finkel,* 445 U.S. 507, 517–18, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980). In applying this policymaker exception to the discharge of public employees, we recognize that a government entity must demonstrate a "compelling interest" to justify any infringement of an employee's First Amendment rights, *see Vezzetti v. Pellegrini,* 22 F.3d 483, 486 (2d Cir.1994) (citing *Rutan,* 497 U.S. at 71 n. 5, 110 S.Ct. at 2735 n. 5), and that the hiring authority must therefore show that " 'party affiliation is an appropriate requirement for the effective performance of the public office involved.' " *Regan v. Boogertman,* 984 F.2d 577, 580 (2d Cir.1993) (quoting *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294). We use the term "policymaker" as a "convenient shorthand" for a government employee who occupies a position for which party affiliation, loyalty or confidence are appropriate. *See id.*

 Kaluczky holds the position of Personnel Officer for the City of White Plains. We need not consult the factors typically reviewed to resolve the question of whether this office is a policymaking position, *see Vezzetti,* 22 F.3d at 486, because Kaluczky's complaint effectively concedes this issue. Among other things, Kaluczky alleges (1) that he was deprived of his statutory duties of "[m]aking personnel decisions regarding appointments ... or layoffs ... or establish[ing] City personnel practices and/or policy," *see Brown v. Trench,* 787 F.2d 167, 168 (3d Cir.1986) (finding authority to hire and fire an indicia of a policymaking position); (2)

that he was threatened with the removal of the "labor negotiation functions" traditionally a part of his office; and, (3) that he was not permitted to attend certain "cabinet level meetings," "strategic personnel meetings," and "collective bargaining strategy meetings". Given these responsibilities, it is evident that the White Plains Personnel Officer is within "the category of policymaking positions for which party affiliation and a shared ideology may be an appropriate employment consideration." *Vezzetti,* 22 F.3d at 486; *see also Regan,* 984 F.2d at 580 (stating that relevant factors in determining policymaker are the powers "vested by law" and "inherent in the office").

Policymakers hold their office at the will of their employer, and may be discharged by reason of political affiliations, political beliefs, ideological viewpoints or partisan activity. Thus the First Amendment does not bar "adverse employment action" based solely on the content of a policymaker's expressive activities or beliefs. Adverse employment actions include discharge, demotion, refusal to hire, refusal to promote, and reprimand. *See Rutan,* 497 U.S. 62, 110 S.Ct. 2729; *McCabe v. Sharrett,* 12 F.3d 1558, 1563 (11th Cir.1994).

Because Kaluczky is a policymaker, it is clear that—but for his fixed term of office—the defendants would be free to fire him. Putting aside for the moment the issue of tenure, the policymaker exception would permit the defendants to isolate Kaluczky politically, exclude him from high-level meetings, withhold from him sensitive and confidential information, and transfer all of his policymaking responsibilities to persons loyal to the defendants—all of which Kaluczky characterizes as "acts of retribution". These measures are fully condoned by the rationale of the *Elrod–Branti* line of cases regarding patronage dismissals. An administration has an interest in ensuring that its high-level, policymaking employees adhere to the party line, and promote and implement the agenda of that administration. *See e.g., Elrod,* 427 U.S. at 367, 96 S.Ct. at 2686 (government entity has interest in preventing employees from "obstructing the implementation of policies of the new administration"); *Rutan,* 497

U.S. at 74, 110 S.Ct. at 2737 (government entity has interest is "securing employees who will loyally implement its policies"); *Regan*, 984 F.2d at 580 ("Elected officials are charged with carrying forth the mandate of the voting public, and in order to effectuate the policies promised the electorate, that official must be able to have trusted advisors ... who are directly accountable to that official."). The steps taken to isolate Kaluczky and reduce his influence over city government help to assure that those who will be held politically accountable for running the City will be able to decide who will formulate and carry out the policies of the current administration.

*Tenure.* One question presented is how the Personnel Officer's six-year term of office affects the power of the Schulman administration to deal with Kaluczky as a policymaker. Kaluczky contends that, because he is protected from discharge by state law, he is also protected, under the federal Constitution, from diminution in his statutorily defined or traditionally performed duties, and from politically-inspired rebukes, harassment and humiliation inflicted with the design of forcing him to resign.

The White Plains City Charter provides that the mayor, who is elected to a four-year term of office, appoints the City's Personnel Officer to a six-year term. The Charter thereby makes the City's Personnel Office a political power center and creates the potential for political conflict. Because Kaluczky is a policymaker holding office in city government, and has evidenced animosity towards the Schulman administration, Schulman has no obligation *under the federal Constitution* to bring Kaluczky into the mayor's cabinet, to seek or accept his advice, to pay him deference, to speak to him, or even to offer him ordinary courtesy. *See Wilbur v. Mahan,* 3 F.3d 214, 217 (7th Cir.1993) (stating that government would be "unmanageable if its head had to appoint or retain his political enemies, ... members of the opposite party ... [or] of no party, neither enemies nor friends" to policymaking positions).

Kaluczky, however, suggests that his six-year tenure is intended to "insulate" the Personnel Officer from partisan politics, criticism and public rebuke. That is plausible, but it is just as easy to say that the purpose of staggered terms of office is to cause creative tension between the City's elected administration and the appointee of a prior administration. Kaluczky cannot expect to be the only policymaker in America insulated from criticism, hostility, political retribution and humiliation. Kaluczky's tenure makes some difference: it gives him a platform from which to respond to public rebuke, to challenge the administration's policies and practices, and to contest any infringements on his traditional powers and responsibilities either directly to the public, in the press or (possibly) in state court. Further, it may be that the Charter, or other expressions of state law, requires some accommodation between the Personnel Officer and the mayoral administration. But we are not in a good position to either define such an accommodation or to enforce it. In any event, the federal Constitution does not set terms of engagement for warring factions of municipal government.

In short, Kaluczky's six-year term of office does not alter his status as a policymaking employee. Because the defendants would be permitted to discharge Kaluczky, but for his tenure, nothing in the First Amendment stops them from allocating the policymaking functions of government among tenured and non-tenured municipal employees in such a way as to implement the policies for which the defendants are ultimately held accountable.

*Truthful Testimony.* Kaluczky also contends that the defendants have conducted a campaign of retribution for his "truthful testimony and expression of opinion adverse to Joseph Roche in Roche's civil service disciplinary proceeding" conducted in 1990 during the Del Vecchio administration. The details of the "proceeding" are sketchy; however, Kaluczky alleges that he opined that "Roche's political activities were improper and ... that Roche could properly be terminated by reason of other alleged misconduct with respect to which [Roche] had been charged." Kaluczky maintains that his testimony concerned a "matter of public concern" and, therefore, that he is protected from any

adverse treatment as a result of such testimony.

█ The right to criticize public officials is at the heart of the First Amendment's right of free speech. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 282, 84 S.Ct. 710, 727, 11 L.Ed.2d 686 (1964). Citizens are encouraged to speak out on matters of public concern and are constitutionally protected when they exercise that right. *See Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The First Amendment rights of public employees, however, are not absolute because the government has an offsetting interest in efficiently managing its affairs. *See id.; Connick v. Myers,* 461 U.S. 138, 151–53, 103 S.Ct. 1684, 1692–93, 75 L.Ed.2d 708 (1983). As the Supreme Court stated in *Pickering,* a balance must be struck

> between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

391 U.S. at 568, 88 S.Ct. at 1734. This balancing test must be conducted on a case-by-case basis. *Id.*

While there is no explicit *Elrod–Branti* policymaker exception to the *Pickering* line of cases, the governmental interests recognized in both lines of cases are essentially the same. A public employer has an important interest in promoting efficiency, ensuring loyalty, and fostering positive morale in the workplace. *See Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987). In balancing the First Amendment interests of an employee against the interests of the employer, other circuits have held that First Amendment constitutional protection for policymakers is often slight. *See Bates v. Hunt,* 3 F.3d 374, 378 (11th Cir.1993); *Kinsey v. Salado Indep. Sch. Dist.,* 950 F.2d 988, 992 (5th Cir.), *cert. denied,* 504 U.S. 941, 112 S.Ct. 2275, 119 L.Ed.2d 201 (1992); *Rodriguez Rodriguez v. Munoz Munoz,* 808 F.2d 138, 145 (1st Cir. 1986).

Voluntarily appearing as a witness in a public proceeding or a lawsuit is a kind of speech that is protected by the First Amendment. *See Piesco v. City of New York,* 933 F.2d 1149, 1158 (2d Cir.), *cert. denied,* 502 U.S. 921, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991); *Bates,* 3 F.3d at 377. There are evident policy reasons for encouraging truthful testimony and for insulating witnesses from retribution or the threat of retribution. *See Piesco,* 933 F.2d at 1160 (recognizing the risks of being fired for truthful testimony, committing perjury, or being held in contempt for refusal to testify). On the other hand, neither the Constitution nor the *Pickering* balancing test requires a public employer to entrust an adversary or critic with a sensitive, confidential or policy role. *See Bates,* 3 F.3d at 377 (holding that the First Amendment does not protect an employee from termination for voluntarily aiding a co-employee's civil lawsuit for money damages against a Governor personally); *see also Wilbur,* 3 F.3d at 215–16.

█ Kaluczky alleges that he is suffering retribution for giving truthful testimony. However, the measures allegedly taken to punish him for truthful testimony are the same measures—diminution of policymaking powers and influences, ostracism and public humiliation—supposedly taken against him as a policymaker in the administration of the rival political party. Therefore, in this case, the truthful-testimony issue is cast in particularly narrow terms: whether Kaluczky's truthful testimony, and whatever incremental hostility that provoked, serve to reinforce the First Amendment rights that are weakened by Kaluczky's role as a policymaker. We conclude that the First Amendment does not prevent Kaluczky's political opponents from seeking to weaken and isolate him, whether or not Kaluczky's truthful testimony is yet another source of hostility between them. The First Amendment will not compel the defendants to take Kaluczky into their councils or even to speak to him.

We need not decide whether a policymaker (particularly one holding a tenure position) may be fired or his salary docked for voluntarily or involuntarily giving truthful testimony under oath. Kaluczky was not fired, nor was his salary reduced.

## D. *Due Process*

All of Kaluczky's five federal claims sound in terms of the First Amendment (*e.g.*, violations of his rights of speech, association and political advocacy), but are stated as violations of "the First and Fourteenth Amendments to the United States Constitution." We read that allegation as good pleading of a First Amendment claim against a state or municipal officials. *See Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 630, 69 L.Ed. 1138 (1925). However, Kaluczky's appellate brief asserts, for the first time, that each alleged wrong violated "his right to substantive due process."

Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is "incorrect or ill-advised." *See Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994) (citing cases). The first step in substantive due process analysis is to identify the constitutional right at stake. In his appellate brief, Kaluczky argues that the defendants'

> threats of putting him through Hell, their outrageous public humiliation and embarrassment of him, their retaliatory stripping away of [his] job duties and interference with those remaining, as well as their rabid political character assassination [were] arbitrary and capricious.

Although Kaluczky asserts in conclusory terms that these acts of retribution violated his substantive due process rights, he does not specify which constitutional rights he is invoking.

A plurality of the Supreme Court has recently stated that, where a § 1983 plaintiff alleges a cause of action protected by an "explicit textual source" of the Constitution, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing" that claim. *See Albright v. Oliver*, —— U.S. ——, ——, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)); *see also Ayeni v. Mottola*, 35 F.3d 680, 691 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995). The complaint therefore does not state a generalized claim for violation of substantive due process. To the extent that Kaluczky alleges a violation of his First Amendment rights, we have already concluded that Kaluczky has failed to state a claim for relief under § 1983. *See supra* part II.C.

Although not raised explicitly in Kaluczky's pleadings, Judge Brieant considered *sua sponte* at oral argument whether Kaluczky could allege the deprivation of a property right. In order to state a substantive due process claim premised on a deprivation of property, Kaluczky would have to establish that he was deprived of a valid "property interest" in a constitutionally-protected benefit. *See Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Zahra v. Town of Southold*, 48 F.3d 674, 679–80 (2d Cir.1995). Kaluczky, however, has not identified what property interest the defendants are alleged to have invaded. The nature of such a property interest is not self-evident, because Kaluczky has not been fired and his salary has not been cut. (He received a 2.54% raise effective as of May 1994.) Judge Brieant offered to allow Kaluczky to amend his pleadings, but Kaluczky did not then avail himself of that opportunity. The defendants argued that amending the complaint would be futile because Kaluczky has retained the emoluments of his office and thus cannot assert the deprivation of a protected property interest. In sum, it is unclear whether, based on the record before us, Kaluczky is asserting a claim premised upon the deprivation of a property right. In any event, as a matter of discretion, we will not address that issue, chiefly because of the insufficiency of the record on appeal.

## E. *Remaining Claims*

All of plaintiff's claims against the City of White Plains remain for disposition by the district court, as well as plaintiff's state law claim against these individual defendants. It is for the district court on remand to consider whether to exercise federal supplemental jurisdiction over the state claims. *See* 28

**212**

U.S.C. § 1367; *Block v. First Blood Assocs.,* 988 F.2d 344, 351 (2d Cir.1993).

### III. Conclusion

For the foregoing reasons, we reverse the district court's order denying defendants' motion to dismiss, and remand to the district court for further proceedings in accordance with this opinion.

KAUFMAN, Senior District Judge, concurring:

In *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980), Justice Stevens, writing for the majority, and after noting that "[b]oth opinions in *Elrod* [*v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)], recognize that party affiliation may be an acceptable requirement for some types of government employment," wrote that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the higher authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti* at 518, 100 S.Ct. at 1294. In the light of that standard and in view of the tenure requirements of the White Plains City Charter, I agree that the individual defendants were faced with interpreting alleged first amendment and/or due process rights of Kaluczky which were not subject to sufficiently definitive reasonable understanding by them as government officials. Accordingly, I concur in the within reversal and remand. In so doing, however, I have reservations concerning the majority's reliance upon the "policymaker" standard, in view of *Branti.* I also have reservations, in the light of *Branti,* concerning the majority's analysis of the "tenure" issue, and, in terms of the federal constitutional rights of a person such as Kaluczky, would leave that issue for another day, particularly in view of the fact that it may be independently of importance, upon remand in this case, in connection with the state law claims of plaintiff.