**Michael J. AFFRUNTI, L. Donald Jaffin, John L. Molloy, Jr., Edward S. Smith, and Kathleen W. Forman, Plaintiffs,**

v.

**Benjamin L. ZWIRN, May W. Newburger, Anthony D'Urso and Barbara J. Johnson, as individuals and in their capacity as members of the Town Board of North Hempstead, and the Town of North Hempstead, Defendants.**

No. 92 CV 1512 (TCP).

United States District Court, E.D. New York.

July 21, 1995.

Richard J. Zahnleuter, Roemer & Featherstonhaugh, Albany, NY, for plaintiffs.

Gerard E. Harper, Paul, Weiss, Rifkind, et al., New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

The plaintiffs move this Court for permission to reargue the motion for summary judgment which the Court heard and granted in favor of the defendants on May 12, 1995. For the reasons set forth herein, the plaintiffs' motion is hereby denied.

## FACTUAL BACKGROUND

Plaintiffs Michael J. Affrunti, L. Donald Jaffin, John L. Molloy, Jr., Edward S. Smith and Kathleen W. Forman, are all current or former Republican members of the North Hempstead Town Board of Zoning and Appeals (hereinafter the "BZA"). The BZA is a quasi-judicial, autonomous body, comprised of members who are individually appointed by the North Hempstead Town Board (hereinafter the "Board"). Pursuant to New York Town Law § 267(1), BZA members serve five-year terms and may only be removed for cause after receiving notice and a hearing.

In accordance with Town Law, the Board sets the compensation for BZA members on an annual basis in the "part town" budget, which is financed by residential taxes. Town Law § 267. In the early 1990s, the Board was comprised of Republicans, with the exception of the Town Supervisor, Benjamin Zwirn, a Democrat. In 1990, Zwirn proposed a tentative Town budget for fiscal year 1991 which provided for tax and spending cuts. Zwirns' proposed budget cuts included a substantial reduction in the salaries of BZA members. The BZA Chairman, Michael Affrunti, protested these reductions, however; and the Board ultimately rejected Zwirn's 1991 budget in its entirety.

The following year, Zwirn proposed a budget for fiscal year 1992, which also entailed significant cuts in spending, coupled with very substantial reductions in BZA compensation. In accordance with Town Law, Zwirn submitted this proposed budget at a public hearing on October 15, 1991, at which time Chairman Affrunti testified against the BZA salary cuts. The Board, which was still controlled by Republicans, voted to override certain aspects of Zwirn's proposed budget. Yet it left the BZA salary reduction plan intact.

After the November, 1991 elections, the Board was comprised of Democrats Benjamin Zwirn, May Newburger, Anthony D'Urso and Barbara Johnson, as well as Republican Gerard Cunningham. On November 19, 1991, before these newly-elected members took office, the incumbent Republican-dominated Board voted, once again, on Zwirn's proposed budget, yet neither passed nor further modified it. This was due to the fact that three Board members abstained from the vote, one voted against the proposed budget, and Zwirn alone voted in favor of it.

Because the Board failed to either adopt or reject the proposed budget within the statutory deadline, Zwirn's preliminary 1990 budget, as amended by the Board's vote in October, 1991, became the final budget for fiscal year 1992. This occurred by operation of North Hempstead Town law on November 20, 1991. On January 1, 1992, the newly-elected Board members Newburger, D'Urso and Johnson took office, joining Zwirn and Cunningham. At a Town meeting on January 7, 1992, the Board adopted certain resolutions which implemented the new budget provision concerning the compensation of approximately fifty (50) Town officials, including BZA members. More specifically, the Board members, including Republican Gerard Cunningham, unanimously voted to cut the annual salaries of BZA members from $18,500 per year to $2,000 per year. The Board also reduced the annual salary of BZA Chairman Affrunti from $29,000 per year to $3,000 per year. These reductions both amounted to salary cuts of approximately eighty-nine (89) percent.[1]

---

1. The reductions in BZA compensation fulfilled explicit campaign pledges by the newly-elected Board members to cut spending and taxes. For instance, defendant Zwirn ran for re-election on the platform that BZA members were overpaid

On February 18, 1992, the Board adopted another resolution which eliminated the BZA members' medical, dental and optical benefits. Because BZA membership is a part-time position requiring approximately seven hours of work per week, this resolution brought BZA benefits into alignment with the Town's overall coverage policy, which extends only to full-time and part-time employees who work at least twenty hours per week.

Despite the cuts in compensation and benefits, the plaintiffs herein remained on the BZA and accepted their reduced salaries. On March 27, 1992, however, they brought this federal action pursuant to 42 U.S.C. §§ 1983, 1985(1) and (3), as well as Town Law § 267. In the action, the plaintiffs allege that the defendants conspired to reduce their salaries and benefits so drastically that it would constitute a constructive termination and would force the plaintiffs to resign from the BZA. The plaintiffs contend that the defendants did this solely because the plaintiffs are Republicans and the defendants wished to fill the vacant BZA seats with fellow Democrats. The plaintiffs charge that such conduct violated their rights to free speech, free association and equal protection, privileges and immunities as guaranteed by the First and Fourteenth Amendments of United States Constitution.

## PROCEDURAL BACKGROUND

### A. *The Defendants' Motion To Dismiss*

On July 3, 1992, the defendants moved this Court to: (1) join necessary parties to the action pursuant to Federal Rule of Civil Procedure 12(b)(7); (2) dismiss the Complaint for failure to state a claim; and (3) sanction the plaintiffs pursuant to Federal Rule of Civil Procedure 11. In this Court's Memorandum and Order of September 3, 1992, the Court granted in part and denied in part the defendants' motion. Specifically, the Court declined to join those Board members who abstained from the January 7, 1992 vote because it found that they were not necessary parties. The Court also declined to impose Rule 11 sanctions upon the plaintiffs because it determined that their suit was not frivolous. Finally, the Court denied the defendants' motion to dismiss the first, third and fourth claims in the Complaint, yet it granted the motion to dismiss the second and fifth claims.

With respect to the first claim under 42 U.S.C. § 1983, the Court found that the plaintiffs sufficiently pleaded that the defendants reduced their salaries and benefits solely for political reasons, thereby violating the doctrine of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (dismissal of a public employee for political patronage reasons violates that individual's First Amendment rights).[2]

With regard to the third claim, the Court found that the plaintiffs sufficiently pleaded the following under 42 U.S.C. § 1985(3): (1) a conspiracy to deprive them of "a proper, reasonable fair and adequate living wage," (Complaint ¶ 82), (2) an act in furtherance of the conspiracy, (3) injury as a result of the conspiracy, and (4) membership in a protected class, namely the Republican Party.

Finally, the Court declined to dismiss the plaintiffs' fourth claim wherein the plaintiffs alleged that the reductions in salary and benefits constituted a constructive termination under Town Law § 267(1), which provides that a BZA member may not be removed except "for cause and after a public

---

and that service on the BZA was "giving something back to the community." Zwirn Aff. ¶ 87.

**2.** The Court wrote as follows on this point:
While, as suggested by defendants, there may have been non-political reasons for the cuts in plaintiffs' salaries, the allegations in the complaint raise the specter that defendants' acts were based solely on plaintiffs' membership in the Republican Party....
As this action progresses, it is possible that defendants may be able to prove that their actions were undertaken for budgetary reasons rather than political reasons, however, at this moment, the first cause of action must be sustained. *See Saraceno v. City of Utica,* 733 F.Supp. 538, 542 (N.D.N.Y.1990) (declining to grant summary judgment on political retaliation claim because "whether plaintiff was dismissed solely for the reason that she was not affiliated with the Republican Party is a matter better left for further development at trial."). Memorandum and Order 92–CV–1512 (September 3, 1992) at 10–11.

hearing." The Court held that, taking the allegations of the Complaint as true as it must, the plaintiffs sufficiently pleaded a violation of Section 267(1).[3]

■ The Court granted the defendants' motion to dismiss the plaintiffs' second and fifth claims, on the other hand, because it found that the plaintiffs failed to sufficiently plead a conspiracy under 42 U.S.C. § 1985(1)[4] or a breach of contract.[5] *See* Memorandum and Order 92–CV–1512 (Chief J. Platt, September 3, 1992) at 17.

## B. *The Defendants' First Motion for Summary Judgment*

On April 15, 1994, the defendants moved this Court for summary judgment; and on April 22, 1994, the Court heard oral argument on that motion. The Court denied the motion from the Bench without prejudice to renew it after the plaintiffs amended their Complaint. The Court based its decision upon the fact that it was concerned that the plaintiffs might have a claim under the Equal Protection or Due Process Clauses of the Constitution. *See* Transcript of Oral Argument on Motion for Summary Judgment (April 22, 1994) at 16. Thus, the Court allowed the plaintiffs thirty (30) days to amend their Complaint with respect to these allegations. The Court said on the record that it was not passing upon the plaintiffs' freedom of association claim under the First Amendment. In fact, when asked by defense counsel if the Town has an absolute right to decide whether a libertarian or Republican sits on the BZA, the Court replied:

*I don't know whether you do anymore.* That's what I'm suggesting to you. You have no right to prevent me if I'm black from holding the job or if I'm a Chinese or what have you. What I'm saying is political affiliation *may* also be out on the same score.... [The question of whether political affiliation is out on the same score] may be an issue of fact here. The Board of Zoning based on my experience with the local government is not what we normally think of as a policy-making body. They decide individual cases.

Transcript of oral argument on the defendants' first summary judgment motion (April 22, 1994) at 17–18 (emphasis added).

## C. *The Defendants' Second Motion For Summary Judgment*

On May 5, 1994, the plaintiffs amended their Complaint; and on May 5, 1994, the defendants moved this Court for summary judgment a second time. The Court heard oral argument on May 12, 1995, after which it granted summary judgment in favor of the defendants. In so ruling, the Court reiterated that it denied the defendants' previous summary judgment motion because it was concerned that they might have an equal protection or due process claim. *See* Transcript of Oral Argument on Defendants' Second Motion for Summary Judgment (May 12, 1995) at 8. After careful review of the plaintiffs' Amended Complaint and the parties' briefs in support of or opposition to the defendants' second summary judgment motion, however, the Court determined that the plaintiffs did not have an equal protection claim because each member of the BZA was

---

3. In so holding, the Court relied upon the case of *Sheldon v. Stabile*, 57 Misc.2d 407, 411, 293 N.Y.S.2d 3, 7 (N.Y.Sup.1968), which held as follows:

   This court will not countenance the unilateral and unauthorized dismissal of duly-appointed Town officials by newly-elected members of a Town Board, without due cause or compliance with the procedures mandated by the legislature, in order to advance their own personal or political motives.

   Memorandum and Order 92–CV–1512 (September 3, 1992 Chief J. Platt) at 16–17.

4. 42 U.S.C. § 1985(1) is designed to provide a remedy against conspiracies that interfere with

"the performance of official duties by *federal* officers." *Kush v. Rutledge*, 460 U.S. 719, 724, 103 S.Ct. 1483, 1486, 75 L.Ed.2d 413 (1983) (emphasis added). Thus, the Court found the statute inapplicable to the Town officials in the *Affrunti* case. Memorandum and Order 92–CV–1512 (September 3, 1992 Chief J. Platt) at 13.

5. Specifically, the plaintiffs' fifth claim alleged that their appointment to the BZA constituted the formation of a contract with the Town Board, and that the salary and benefits reductions breached this contract. The Court found, however, that appointment to a government office does not create a contractual relationship between an individual and the government body responsible for that appointment. *Id.* at 16–17.

treated uniformly, including subsequent members of the BZA. *Id.* at 8.

The Court also found that the plaintiffs did not have a valid procedural due process claim because they were put on notice of the proposed resolutions at the Town hearing on October 15, 1991—over a year before the resolutions were adopted. *Id.* at 6. Secondly, the plaintiffs were entitled to a hearing regarding the resolutions pursuant to New York C.P.L.R. article 78; yet they did not avail themselves of that opportunity. *Id.* at 5.

The Court also answered the question that it pondered during the defendants' previous summary judgment motion, (*supra* at 10), in that it found that membership on the BZA is not constitutionally-protected. This is due to the fact that BZA membership is a quasi-judicial, policymaking position, rather than a legislative one. *Id.* at 6–9. Indeed, the Court concluded as follows on that issue:

> The Board of Zoning Appeals, as I see it is the next closest thing you can get to a court, whether it be a legislative court, I guess it is, but a policy-making position, and people have called it a legislative position, but it really isn't. It's like a judicial position, but there is no protection for them.

> Unfortunately, you are like state court judges, are at the mercy of the legislature ... I think they could reduce your salary to a dollar a year ... even if you could show some political motivation, it's always across the board, I think they have the power to do it. They can't terminate you under state law, but they don't have any obligation of giving you any money....

> In other words, these are not protected positions, they are not like the Chief of Police in the Village or what have you that have civil service protection, so to speak. They are policy-making positions ... [Y]ou have no protection..... They could

have [reduced the BZA salaries] with or without budget constraints.

*Id.* at 8–12.

Unlike BZA compensation, however, the Court acknowledged that the plaintiffs' five-year *term* in office *is* protected pursuant to the Town Law. *Id.* at 9–10. Yet the Court ruled that such protection did not mean the defendants could not dramatically reduce the plaintiffs' salaries, since the latter are not statutorily protected. *Id.* at 9.

On June 9, 1995, the plaintiffs moved this Court for reargument of their February 27, 1995 motion for summary judgment. It is that motion which the Court addresses in this Memorandum and Order.

## DISCUSSION

### PART ONE

### THE PLAINTIFFS FALL WITHIN THE POLICYMAKER EXCEPTION TO FIRST AMENDMENT PROTECTION FOR PUBLIC EMPLOYEES

A. *The "Policymaker Doctrine"*

The plaintiffs contend that the Court's finding that they do not have a protected right to their BZA salaries should not be not "outcome-determinative" with respect to the alleged First Amendment violations herein. *See* Memorandum in Support of Plaintiffs' Motion for Reargument of the February 27, 1995 Motion for Summary Judgment (June 6, 1995) at 1. Rather, the plaintiffs argue that the partisan motivations for the defendants' actions violated the plaintiffs' First Amendment rights regardless of whether or not their salaries are protected.[6] The plaintiffs cite *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), *reh'g denied,* 497 U.S. 1050, 111 S.Ct. 13, 111 L.Ed.2d 828 (1990), in support of this proposition wherein the Supreme Court held that the lack of entitlement to a benefit, or the nature of a benefit as purely discretionary, is not outcome-determinative and is "be-

---

6. Specifically, the plaintiffs argue as follows:
   ... [the] a government may not deny a benefit that is discretionary, or may not deny a benefit to an 'unentitled' person, if the denial is based on a motivation that infringes on that person's

interest in free speech and association protected by the First Amendment.
Memorandum of Law in Support of Plaintiffs' Motion For Reargument at 1–2.

side the point" in a First Amendment context. *Rutan,* 497 U.S. at 72, 110 S.Ct. at 2736. The *Rutan* Court also observed that "conditioning public employment on the provision of support for the favored political party 'unquestionably inhibits protected belief and association.'" *Id.* at 69, 110 S.Ct. at 2734 (quoting *Elrod v. Burns,* 427 U.S. at 359, 96 S.Ct. at 2683).

This Court acknowledges that it echoed the same concerns as the *Rutan* and *Elrod* Courts in its earlier Memorandum and Order of August 31, 1992. After careful consideration of the facts of the *Affrunti* case as well as recent relevant case law, however, the Court finds that *Elrod, Rutan* and their progeny are inapplicable to this case because the *Affrunti* plaintiffs fall, as a matter of law, within the "policymaker doctrine" of *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294–1295, 63 L.Ed.2d 574 (1980), *Regan v. Boogertman,* 984 F.2d 577, 580 (2d Cir.1993), *Vezzetti v. Pellegrini,* 22 F.3d 483 (2d Cir. 1994), and *Kaluczky v. City of White Plains,* 57 F.3d 202 (2d Cir.1995), amongst others.

The recent case of *Kaluczky v. City of White Plains, supra,* is most clearly on point in this regard because the Second Circuit therein held that a policymaking employee, even one with a statutory six-year term in office, enjoys no constitutional protection from adverse treatment by political adversaries. *Kaluczky,* 57 F.3d at 204–205. Stephen Kaluczky, a Republican Personnel Officer in White Plains, was appointed to a six-year term in 1992, the last year of a Republican administration. After the Democrats took office in January, 1994, they allegedly retaliated against Kaluczky for his political views, his party affiliation and certain testimony he gave at a disciplinary hearing that ended in the dismissal of a Democrat. Specifically, Kaluczky alleged that the defendants humiliated, harassed and isolated him politically, as well as drastically curtailed his professional responsibilities, in an effort to induce his resignation. Consequently, he filed suit against the newly-elected Democrats pursuant to 42 U.S.C. § 1983; yet he retained his

statutory position and salary even after commencing the lawsuit. *Id.* at 205–206.

Although the Second Circuit's subject-matter jurisdiction was based upon the issue of qualified immunity, the Court took pendent jurisdiction over the following question:

> [W]hether Kaluczky's status as a confidential policymaking employee bars his invocation of First Amendment rights in the circumstances presented and whether Kaluczky's six-year term of office affords him additional First Amendment protection.

*Id.* at 207.

The Court held that the defendants were entitled to immunity from suit in their personal capacity because the "contours of the right alleged to have been violated were not sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Id.* at 207 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Additionally, the Court held that, because Kaluczky is a public employee in a confidential policymaking position, he has no First Amendment protection from being discharged or having his authority reduced as a result of his political beliefs, party affiliation, or political statements. *Id.* at 207.[7] Specifically, the *Kaluczky* Court wrote as follows on this point:

> Policymakers hold their office at the will of their employer, *and may be discharged by reason of political affiliations, political beliefs, ideological viewpoints or partisan activity. Thus the First Amendment does not bar 'adverse employment action' based solely on the content of a policymaker's expressive activities or beliefs.* Adverse employment actions include discharge, demotion, refusal to hire, refusal to promote, and reprimand.

*Id.* at 208 (quoting *Rutan,* 497 U.S. at 62, 110 S.Ct. at 2729) (emphasis added).

The *Kaluczky* Court explained that it "use[d] the term 'policymaker' as a 'convenient shorthand' for a government employee

---

**7.** In other words, Kaluczky could be isolated and his influence over City government reduced "to assure that those who will be held politically accountable for running the city will be able to decide who will formulate and carry out the policies of the current administration." *Id.* at 209.

who occupies a position for which party affiliation, loyalty or confidence are appropriate." *Id.* at 208 (citing *Regan v. Boogertman,* 984 F.2d at 580 (stating that the relevant factors in determining a policymaker are whether the employee: (1) is exempt from civil service protection; (2) has some technical competence or expertise; (3) controls others; (4) is authorized to speak in the name of policymakers; (5) is perceived as a policymaker by the public; (6) influences government programs; (7) has contact with elected officials; and/or (8) is responsive to partisan politics and political leaders)).

Similarly, in *Vezzetti v. Pellegrini,* 22 F.3d 483 (2d Cir.1994), the Republican Highway Superintendent of Orangetown, New York claimed that the newly-elected Democrat Board members' decision to remove Vezzetti from office and replace him with a fellow Democrat violated his First Amendment rights. The Second Circuit held, however, that a highway superintendent is a policymaking position, for which political affiliation is a valid employment consideration. *Id.* at 486. Thus, the Circuit affirmed the District Court's grant of summary judgment in favor of the defendants because it found that they did not violate the plaintiff's First Amendment rights.

The Second Circuit deemed Vezzetti's position to be a policymaking one because he: lacked civil service status; was responsible for a budget of over four (4) million dollars; managed approximately sixty (60) employees; had broad authority to make hiring decisions; consulted directly with the Town Board on budgets and programs; and made frequent public speeches. *Id.* (citing *Regan v. Boogertman, supra*). *See also Matthews v. Town of Blooming Grove,* 882 F.Supp. 1420, 1422–1424 (S.D.N.Y.1995) (wherein the Court held that the Bookkeeper/Clerk to the Town Supervisor fell within the political dismissal or policymaking exception to First Amendment protection of public employees because her position was one for which "political affiliation is a valid consideration.").

**B.** *The BZA Members Are Policymakers*

■ Turning to the case before this Court, the BZA is a "quasi-judicial" body that occupies a central role in implementing the Town of North Hempstead's zoning ordinances. Affrunti Deposition at 167.

Were this Court writing on a "clean slate," it would be the Court's view that BZA members are more closely akin to judicial than to administrative officers and that their decisions should not be governed by political considerations. As a practical matter, however, even BZA Chairman Affrunti appears to regard the BZA's central role as *implementing* the Town's zoning ordinances in that the BZA: (1) grants relief from the requirements of the ordinances where circumstances warrant it; (2) monitors the enforcement of the same; (3) determines whether a potential use is in compliance with its ordinances; and (4) determines when the requirements of an ordinance should not apply. *See* Affrunti Deposition at 158–160. While the latter two functions involve interpretive work, they are basically adjuncts to the first two functions, which form the basic implementing power of the BZA.

Factors that the BZA takes into consideration in deciding whether or not to grant a variance from a zoning ordinance include: potential adverse impacts on environmental conditions; the general aesthetics and/or economics of the situation; the potential affect on the surrounding neighborhood and school system; and any possible hazards or nuisances the variance might pose. *Id.* at 155–164. Thus, as the defendants point out and this Court agrees, "the BZA has discretion to ... supplant the policy judgment of the Town's elected officials in a particular case." Memorandum of Law in Support of Defendants' Motion for Summary Judgment (May 5, 1995) at 3; *see also* Affrunti Deposition at 158–159.

This conclusion is a close call principally because one does not normally think of the staff of quasi-judicial officers as significant in the overall governmental process and does think that the BZA members' influence on governmental programs in the majority of cases is relatively limited. However, the BZA members are neither elected by the public nor appointed by judicial officers. Instead, they are appointed by the ultimate policymaking body, the Town Board, which

routinely replaces these members with others whose political views are similar, if not identical, to their own in order to insure that the Board's policies are not thwarted. Thus, as in *Kaluczky*, although BZA members have specific tenure, they are dischargeable by reason of their "political affiliations, political beliefs, ideological viewpoints or partisan activity" at the conclusion of their terms. *Kaluczky*, at 208.

The BZA also has the following responsibilities: (1) to hear all appeals from the decisions of the Town's Building Commissioner, a political appointee among the Town's cabinet-level officials; (2) to issue special use permits; (3) to administer its own budget and staff of full-time employees; and (4) to make recommendations to the Board regarding changes in the Town's zoning ordinances. *See* Affrunti Deposition at 159–164. Thus, the BZA members appear to fulfill the criteria of *Regan v. Boogertman*, 984 F.2d at 579–580, in that they: (1) are exempt from civil service protection; (2) "control others" by overseeing their own staff; (3) are perceived as policymakers by the public; (4) "influence government programs", namely the Town's zoning; (5) have contact with elected officials, such as the Town Board members; and (6) are responsive to partisan politics and political leaders on the Town Board.

In light of the *Regan, Vezzetti, Kaluczky*, and *Blooming Grove* cases then, this Court finds that the plaintiffs herein are policymakers. As such, they are not protected by the First Amendment against adverse employment action due to their political affiliations.

C. *BZA Tenure Does Not Alter The Outcome*

■ This Court's conclusion is not altered by the fact that the plaintiffs have a statutory entitlement to their five-year terms under Town Law § 267 and that the salary reductions allegedly constituted a constructive termination prior to the end of those terms. The *Kaluczky* Court addressed this precise issue when Kaluczky contended that, because his term in office was protected under State law, it was also protected under the federal Constitution. *Kaluczky*, 57 F.3d at 208–209. The Second Circuit held as follows, however:

Kaluczky's tenure makes some difference: it gives him a platform ... to contest any infringements on his traditional powers and responsibilities either directly to the public, in the press or (possibly) in state court. Further, it may be that the Charter, or other expression of state law, requires some accommodation between the Personnel Officer and the mayoral administration. But we are not in a good position to either define such accommodation or to enforce it. In any event, [T]he federal Constitution does not set terms of engagement for warring factions of municipal government.

... Kaluczky's six-year term of office does not alter his status as a policymaking employee. Because the defendants would be permitted to discharge Kaluczky, but for his tenure, nothing in the First Amendment stops them from allocating the policymaking functions of government among tenured and non-tenured municipal employees in such a way as to implement the policies for which the defendants are ultimately held accountable.

*Id.* at 209.

In keeping with this guidance from the *Kaluczky* decision, this Court does not pass upon whether the BZA plaintiffs herein have grounds for a cause of action in New York State Court as a result of their statutory tenure under North Hempstead Town Law § 267. Rather, it simply holds that, because the plaintiffs appear to be policymakers, the First Amendment does not prevent the defendants from reducing the plaintiffs' salaries, even to the point of a constructive termination.

■ Moreover, the *dicta* in *Kaluczky*, which suggests that there *might* be a deprivation of a property right by reason of this reduction in a BZA member's salary during his or her specified term in office, (*Kaluczky*, 57 F.3d at 211–212), is negated by Section 267 of the Town Law. This is due to the fact that § 267(1) then provided that the Town Board "may" (not "should") provide for compensation for BZA members. This language is clearly permissive and discretionary; as

such, it creates no property right in any BZA member's compensation under the Fourteenth Amendment to the Constitution. *See Gendalia v. Gioffre*, 606 F.Supp. 363, 367 (S.D.N.Y.1985) (a statute that makes government compensation "purely permissive in nature" does not give rise to a constitutionally protected property right). It is well within the scope of public knowledge, of which a court may take judicial notice, that there are a great many members of Town and Village boards of zoning appeals throughout the State who are serving and have served for many terms without any compensation whatsoever.

### D. *The Case Presents No Genuine Issue of Material Fact*

The Court's conclusion that BZA members are not protected against adverse employment action under the First Amendment is also not altered by the fact that the plaintiffs and defendants disagree as to what the latter's motives for reducing the former's salaries were. Because this Court finds that the plaintiffs are not protected by the First Amendment, the question of whether or not the defendants lowered the plaintiffs' salaries solely because of their political affiliation is not a *material* issue of fact. The plaintiffs have no First Amendment claim regardless of what the defendants' motives were because the Court believes the plaintiffs fall within the policymaker doctrine, as discussed above.

### PART TWO

### THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO LEGISLATIVE IMMUNITY

While the issue of the defendants' legislative immunity from § 1983 suits was not raised on the motion for reargument, it was raised but not specifically addressed earlier because the relevant case law in this Circuit was not clarified until recently. In light of this clarification, the Court now addresses the issue.

8. Section 27 of the Clarkstown Town Law provided as follows: "The town board shall fix ... the salaries of all officers, officials and employees

■ The plaintiffs' contention that the defendants acted in their "administrative or executive" capacities when passing upon the BZA resolutions is meritless. *See* Memorandum of Law in Opposition to Defendants' February 27, 1995 Motion for Summary Judgment (May 5, 1995) at 18. Rather, defendants Zwirn, Newburger, D'Urso, and Johnson clearly acted in their legislative capacities as members of the North Hempstead Town Board when they voted in favor of, or abstained from voting upon, the BZA resolutions. As a result, the Court finds that these defendants are not liable to the plaintiffs in their individual capacities.

With respect to the individually-named defendants' actions in their legislative capacities, on the other hand, this Court must decide whether legislative immunity protects the defendants from § 1983 claims. As indicated, the question of whether absolute legislative immunity applies to local legislators was debated in this Circuit until quite recently. In *Dusanenko v. Maloney*, 560 F.Supp. 822 (S.D.N.Y.1983), *aff'd* 726 F.2d 82 (2d Cir.1984), for instance, the Clarkstown Town Board voted to reduce the Town Supervisor's annual salary from $39,000 to $20,000 and the Secretary's annual salary from $15,730 to $7,500. *Id.* at 823.[8] Judge Charles L. Brieant held that the Board members, in their capacities as *local* legislators, were absolutely immune from suit under 42 U.S.C. § 1983 when he wrote as follows:

The actions complained of here were well within the scope of the Town Board's authority as outlined in the above-quoted sections of Town Law [§ 27]. Clearly the Town Board functioned in a legislative capacity, performing at a local level, tasks similar to those that are carried out by the State Senate and Assembly.... *This Court concludes therefore that members of a town board, when acting as local legislators in a capacity comparable to that of members of a state legislature, are entitled to absolute immunity from liability under*

of said town;" yet it did not guarantee any specific or minimum salaries.

§ 1983, and that they were so acting in setting the salaries for [the plaintiffs].... 

*Id.* at 827 (emphasis added).

The Second Circuit Court of Appeals affirmed Judge Brieant's decision upon other grounds but did not address the question of immunity for local legislators, as it had not previously passed upon this issue. *See Dusanenko v. Maloney*, 726 F.2d at 84; *see also Dusanenko v. Maloney*, 560 F.Supp. at 826.[9]

In *Orange v. County of Suffolk*, 830 F.Supp. 701 (E.D.N.Y.1993), Democrat County employees brought a civil rights action against the County, the County Executive and eleven members of the County Legislature, wherein they alleged that they lost their jobs as part of a reorganization attempt to rid the Department of Social Services of non-Republicans. *Id.* at 703; *see also* Memorandum of Law in Support of Defendants' Motion for Summary Judgment in *Affrunti* (May 5, 1995) at 22. Judge Leonard Wexler held that the local legislators were entitled to absolute legislative immunity based, in part, upon the fact that the nine Circuit Courts which had addressed the issue all held that absolute legislative immunity does extend to local legislators who are sued in their individual capacities. *Orange v. County of Suffolk*, 830 F.Supp. at 704. The plaintiffs did not appeal that decision; consequently, the law of the Second Circuit in this regard remained unclear.

However, in *Goldberg v. Town of Rocky Hill*, 973 F.2d 70 (2d Cir.1992), Judge George C. Pratt clarified the issue when he wrote:

> We accept, of course, the town's assertion that legislators are accorded absolute immunity from suits for damages under § 1983. [citations omitted]. While this Circuit has apparently not previously ruled on the question of the entitlement of *local* legislators to absolute immunity, we noted in *United States v. City of Yonkers*, 856 F.2d 444, 456 (2d Cir.1988), *rev'd on other grounds sub nom.*, 493 U.S. 265 [110 S.Ct. 625, 107 L.Ed.2d 644] (1990), that at least

nine other circuits have extended absolute immunity to local legislators.

*Id.* at 72. Similarly, in *Orange Lake Associates, Inc. v. Kirkpatrick*, 21 F.3d 1214, 1224 (2d Cir.1994) (citing *Goldberg v. Town of Rocky Hill, supra*), Judge James L. Oakes wrote that legislative immunity "extends to members of Town Boards within New York State...."

 In light of the clarity which *Goldberg* and *Orange Lake* have provided this Circuit with respect to the issue of immunity for local legislators, this Court finds that the individually-named defendants are entitled to absolute legislative immunity from the plaintiffs' claims under § 1983. As such, the plaintiffs' claims against each of these defendants fail as a matter of law.

### CONCLUSION

For the foregoing reasons, the plaintiffs' motion to reargue the February 27, 1995 motion for summary judgment must be, and hereby is, denied. Thus, the Court's decision to grant summary judgment in favor of the defendants is upheld on the bases set forth above.

SO ORDERED.

---

9. In *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 404–405, 99 S.Ct. 1171, 1178–1179, 59 L.Ed.2d 401 (1979), the Supreme Court extended the doctrine of absolute legislative immunity to regional legislators. The Court expressly reserved the question of whether absolute immunity applies to legislators at the local level.