Odessa L. REEVES, Plaintiff-Appellant
Cross-Appellee,

v.

CLAIBORNE COUNTY BOARD OF
EDUCATION, et al., Defendants,

and

John C. Noble Defendant-Appellee
Cross-Appellant.

No. 86–4238.

United States Court of Appeals,
Fifth Circuit.

Oct. 5, 1987.

James William Craig, Byrd & Assoc., Denise Sweet-Owens, Owens & Owens, Jackson, Miss., for plaintiff-appellant cross-appellee.

Everett T. Sanders, Sanders, Blackmon & Dunmore, Natchez, Miss., Tyree Irving, Greenville, Miss., defendant-appellee cross-appellant.

Before RUBIN, GARZA, and JONES, Circuit Judges.

GARZA, Circuit Judge:

Mrs. Odessa Reeves, appellant-cross-appellee, filed suit against the Claiborne County Board of Education (Board) and Superintendent of Education John C. Noble, appellee-cross-appellant, after a mid-year transfer from her position as Chapter I Coordinator of the Claiborne County schools to a newly-created position within the school system. Reeves was reassigned shortly after giving testimony in a co-employee's lawsuit against Noble and the Board. The district court absolved the school board and its members of official and individual liability, but found Noble individually liable for nominal and punitive damages for the retaliatory transfer of appellant. The district court did not order Reeves reinstated to her prior position nor did it award her lost wages, and Reeves appeals the district court's refusal to grant her back pay and reinstatement. Noble appeals the district court's decision to hold him individually liable for Reeves' transfer.

### The Fall From Grace

Mrs. Odessa Reeves has been employed by the Claiborne County school system for the past thirty (30) years, twenty-five (25) as an administrator. Reeves holds an "AA" Certificate in Administration and a "AAA" Certificate in Elementary Education under Mississippi law.[1] She taught elementary school her first two years of employment but has served in various administrative capacities ever since. Mrs. Reeves' position from January of 1971 through April 6, 1984 was Chapter I Coordinator of the Claiborne County school system, making her responsible for all educational program funding provided by the Mississippi legislature and the federal government. The Chapter I Coordinator has various duties: to work with the State Department of Education in developing and implementing a budget; to plan specific programs in compliance with state education requirements; to identify the educational needs of children on the local level; to serve as a contact person between the State Department of Education and the Claiborne County schools; to design in-service programs for the staff; and to purchase materials and equipment for the school. Reeves had supervisory authority over several other school employees in her role as Chapter I Coordinator.

In 1983, Reeves was assigned the responsibility of implementing the Reading Improvement Program (AIM), which was to be implemented under the Superintendent of Education's direction for the first time in the 1983–1984 academic year. Several assistant teachers were hired to implement the AIM program by Dr. Joseph Travillion, then the Superintendent of the Claiborne County schools. Although Mississippi state law requires that teachers be hired only upon approval of a county board of education after recommendation by the superintendent, the assistant teachers hired for the AIM program were never formally approved by the Board. During the fall of 1983, Dr. John C. Noble successfully challenged Travillion in a closely-contested election for school board superintendent. Another hard-fought issue in the local election was a recall petition to oust three of the five school board members holding seats at

---

1. Mrs. Reeves holds a B.S. Degree from Alcorn State University, which is the same as a "AA" Certificate. She also holds a Masters Degree from Jackson State University and an Honorary Doctoral Degree in the field of humanities from Natchez College.

that time. However, the recall election failed to defeat any of the challenged school board members. Several teachers had been active in the recall petition drive, including at least three new teaching assistants in the AIM program. Dr. Noble took office in early January, 1984, and discharged several teaching assistants in his first few days as superintendent. The AIM teaching assistants claimed that they were fired for political activity in the past election campaign, i.e., support for the recall petition of certain school board members. On January 26, 1984, an action styled *Gloria B. Holloway, et al. v. Claiborne County Board of Education, et al.*[2] was filed in the district court to enjoin the Board from discharging certain assistant teachers in the Claiborne County AIM program. Mrs. Odessa Reeves was served a subpoena to testify in the case, and on March 2, 1984, appellant testified on behalf of the plaintiffs in the *Holloway* litigation. The district court described her testimony as generally "neutral," though her factual testimony on the hiring process and implementation of the AIM program was helpful to the plaintiffs. On cross-examination, Reeves resisted attempts by counsel for the Board to alter her direct testimony on the school system's decision-making process.

The district court entered judgment against Noble and the Board on March 30, 1984, permanently enjoining the defendants from dismissing the teacher assistants. Thereafter, on April 3, 1984, at the next regular Board meeting after the *Holloway*

trial, Noble proposed that Reeves be transferred to a newly-created position of "Director of Reading"[3] to improve the quality of education in the school district. Noble told the Board that the reading performance of the students had fallen much below the norm for Mississippi students.[4] According to Noble, Reeves was transferred because he believed she was qualified to organize the reading program and he was "not satisfied" with her performance as Chapter I Coordinator. On Friday, April 6, 1984, a special Board meeting was called and Superintendent Noble obtained permission to reassign Reeves. At approximately 4:45 p.m. that day, Odessa Reeves received a letter from Noble advising her that effective Monday, April 9, 1984, she would be reassigned as "Director of Reading" in the Claiborne County schools.

Mrs. Reeves' office was moved from the central administrative building of the Claiborne County school district to the kitchen of a home economics class in a junior high school. Mrs. Reeves was given no supervisory authority over other employees, and she did not receive a job description for the new position until she took Noble's deposition in this lawsuit. During the summer months after Reeves was transferred, the Claiborne County school system hired a number of reading aides for the second grade, though appellant was not involved in the hiring process nor informed of the hiring decision. The district court found that certain "longtime perquisites were withdrawn from Reeves, such as reim-

---

2. Civil case No. W84–0012(B) (S.D. of Miss. 1984); *affirmed,* 755 F.2d 172 (5th Cir.1985) (unpublished opinion).

3. Mississippi state law does not recognize a "Director of Reading" position. Both the minutes of the Board meeting on April 3rd and April 6th reflect the creation of a position called "Director of Reading," though Noble maintains that the position all along was "Director of Language Arts (with emphasis on reading)," and that the minutes were transcribed in error. Mississippi state law does not recognize a position of "Director of Language Arts (with emphasis on reading)" either.

   Since April of 1984, Reeves' paycheck stubs reflect the fact that she is being paid for her duties as a reading supervisor. In order to be compensated as a supervisor in a specific area

under Miss.Code Ann. § 37–9–7 (1972), a teacher must be certified in the particular area of study he or she teaches. Reeves holds no certification in the area in which she is presently being paid.

4. The Claiborne County school system was not accredited at this time, one of the problems underlying the entire controversy about the school system, and Noble recommended that the Board authorize a position for someone to oversee the reading program. The only experience that Reeves has had teaching reading was the two years when she taught elementary school twenty-five years ago. Her authorization and certificate under Mississippi law is for an administrator of grades 1–12.

bursement for attendance at state-wide school meetings and the overlooking of her shortened daily work schedule." After her reassignment, Reeves was required to stay alone in her office until 5:00 p.m. although all other administrative employees left around 4:00 p.m. Finally, no one replaced Odessa Reeves as Chapter I Coordinator of federal programs; the position remained unfilled until another coordinator was hired two months before trial.[5] Reeves filed suit against Noble and the Claiborne County Board of Education for a retaliatory transfer and demotion in response to her exercise of First Amendment freedom of speech—her testimony in the *Holloway* trial.

Following discovery and a bench trial, the district court entered its findings of fact and conclusions of law. The court found that Noble's "predominant motive" in proposing Reeves' transfer was to punish her for testifying in behalf of her co-employees in *Holloway* and undermining the school board's defense in that case. The court also found that there were some legitimate reasons supporting Reeves' transfer.[6] Therefore, the court found Noble liable in his individual capacity and awarded Reeves $1.00 nominal damages and $1,000 punitive damages from Noble. No compensatory damages of back pay or reinstatement were awarded because the court decided that Reeves had "voluntarily accepted" the retaliatory transfer when she signed the next school year's employment contract.[7] The district court also said it did not want to get too involved in making the decisions of the Board. Reeves appeals only on the question of appropriate remedies, contending that she was entitled to reinstatement and back pay; Noble appeals the decision to hold him individually liable for Reeves' transfer as a retaliatory personnel action.

*Mt. Healthy Evaluation*

Appellant's substantive first amendment claim that she was retaliated against because she had engaged in constitutionally protected expressive activity is governed by the guidelines set forth in *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The initial inquiry under the *Mt. Healthy* test is whether the statements made or activities engaged in by the public employee are directed to matters of public concern or are otherwise protected by the first amendment. If so, the question becomes how the employee's interest in engaging in such activities is balanced against various legitimate interests the governmental employer may have. This determination is made on a case-by-case basis pursuant to principles set forth in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) and *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *See generally McBee v. Jim Hogg County, Texas,* 730 F.2d 1009, 1013–17 (5th Cir.1984) (en banc). If the foregoing balance is struck in favor of the employee, the second part of the *Mt. Healthy* analysis requires a factual determination which consists of two elements: (1) whether the employee's constitutionally protected speech or activity was a "motivating factor" in the employer's adverse decision; and, if so, (2) whether the employer has demonstrated that it would have made the same decision even in the absence of the protected activity. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Solis v. Rio Grande City Ind. Sch. Dist.,* 734 F.2d 243, 246 (5th Cir.1984); *Kelleher v. Flawn,* 761 F.2d 1079, 1084 (5th Cir. 1985). We agree with the district court that Reeves clearly satisfies the second prong of the *Mt. Healthy* test—her reassignment was "predominantly motivated"

---

5. In the interim, Noble said he "did the duties himself," though the deposition and in-court testimony of Noble reflect that Noble relied on a Dr. Jones to prepare proposals and manage the school system's program budget.

6. Another employee who participated in the *Holloway* case also filed suit against the school

board, but the district court found the reasons for his transfer wholly legitimate. His case has not been appealed.

7. Mississippi does not have a tenure system. Reeves' employment was governed by a series of one-term contracts.

by Noble's intent to punish appellant for providing helpful testimony to the plaintiffs in the *Holloway* litigation. Noble's challenge to the decision below rests on his contention that Reeves' testimony in *Holloway* was not expression protected by the first amendment.

Mrs. Reeves was not a plaintiff in the *Holloway* case. Thus, she was not directly engaged in the exercise of her right to petition the court for a redress of grievances which is protected by the first amendment. *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972). The district court also found that Reeves' testimony was "neutral" in that it did not concern the political controversy surrounding the administration of the local schools. Thus, the testimony did not concern the type of political speech which lies at the core of first amendment freedoms. *See, e.g., New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Of course, statements that were knowingly false or in reckless disregard of the truth would not be protected. The question is whether Reeves' generally factual testimony concerning the reading program in the Claiborne County school district comes within the outer boundaries of first amendment protection.

■ We agree with the district court that Reeves' testimony concerning the operation of the public schools constitutes a matter of "public concern" as required by *Connick* and *Pickering* and that such expression is protected by the first amendment. In *Neubauer v. City of McAllen, Texas*, 766 F.2d 1567 (5th Cir.1985), a police officer claimed he had been discharged for, among other unconstitutional reasons, his statements and sworn testimony to a state grand jury investigating the misconduct of another officer. This Court observed that first amendment protection "is certainly broad enough to encompass furnishing truthful information to the grand jury concerning a matter that body was properly investigating [so as to] be a matter of public concern and not within the class of unprotected activities dealt with by *Con-*

*nick.*" *Id.* at 1572–73 n. 5. Even more instructive is the language in *Smith v. Hightower*, 693 F.2d 359 (5th Cir.1982), where this Court squarely held that "the first amendment protects the right to testify truthfully at trial." *Id.* at 368. *Hightower* involved a retaliatory prosecution by a district attorney against a sheriff and other peace officers who had given unfavorable grand jury testimony. Judge Wisdom's telling analysis offers this insight: "To allow a prosecutor to retaliate against trial testimony on the grounds that it was unfavorable to the state would impermissibly restrict the free expression of the witness based on the content of his testimony." *Id.* An individual's fear of official retribution could inhibit the willingness of the witness to testify truthfully. Not only would the first amendment right of the witness be infringed by this type of coercion, the judicial interest in attempting to resolve disputes by arriving at the truth would be in jeopardy. Furthermore, a witness who succumbed to any real or imagined coercion could also be subject to a charge of perjury. Of course, it is the duty of every person to testify truthfully before a duly constituted tribunal. *Ullman v. United States*, 350 U.S. 422, 439 n. 15, 76 S.Ct. 497, 507 n. 15, 100 L.Ed. 511 (1956). Yet, "[t]hese values, along with the first amendment values, would not be served" if the fear of retaliation and reprisal "effectively muzzled" witnesses testifying in open court. *Id.*

Although both *Neubauer* and *Hightower* involved testimony before a grand jury, we perceive no meaningful distinction between testimony in a criminal proceeding and testimony in a civil proceeding. The concerns expressed in *Hightower* are equally applicable here. To allow a government employer to retaliate via demotion, transfer, or reassignment against an employee's unfavorable trial testimony would undermine the ability of the witness to speak truthfully without fear of reprisal. Our judicial system is designed to resolve disputes, to right wrongs. We encourage uninhibited testimony, under penalty of perjury, in an attempt to arrive at the truth. Appellant's testimony did not criticize specific officials

but described only the operation of the school system in general. It was testimony given under oath in an open court and obtained by service of process. *Cf. Bickel v. Burkhart,* 632 F.2d 1251, 1256–57 (5th Cir.1980). Reeves' testimony truthfully related the facts and her impressions of the decision-making process of the government officials responsible for the personnel decisions of the local school system. The district court was correct in concluding that Reeves was discharged for exercising rights of free expression protected by the first amendment.

### Remedial Matters

■ The equitable remedy of back pay is required in the context of adverse personnel actions which occur as retaliation for the exercise of first amendment freedoms. *Kingsville Ind. School Dist. v. Cooper,* 611 F.2d 1109, 1114 (5th Cir.1980); *Greminger v. Seaborne,* 584 F.2d 275, 279 (8th Cir. 1978); *Williams v. City of Valdosta,* 689 F.2d 964, 977 (11th Cir.1982). Mrs. Reeves' salary in the position of Director of Language Arts (with emphasis on reading) was not reduced during the rest of the one-year contract term covering the 1983–84 school year. The district court concluded that "Reeves voluntarily accepted a lower salary for the 1984–85 [and subsequent] school year when she signed a new contract." Thus, it decided that a back pay award was inappropriate. Mrs. Reeves' $30,424.00 salary as Chapter I Coordinator in 1983–84 was dropped to $26,252.00 for Director of Language Arts in 1984–85 and remains below her former salary to this day.[8]

■ The district court's ruling denying back pay ignores the fact that appellant was under a legal duty to minimize or mitigate her damages. In *Kingsville Ind. School Dist. v. Cooper, supra,* this Court explained that the prevailing litigant was "entitled to judgment for back pay beginning with the 1972–73 year and continuing until effective reinstatement, *subject to principles of mitigation.*" *Id.* at 1114

(emphasis added). Indeed, if a defendant can show that other employment was available and the plaintiff was not diligent in seeking such employment, the principles of mitigation mandate that no award of back pay can be granted. *Sparks v. Griffin,* 460 F.2d 433, 443 (5th Cir.1972). Reeves followed the course of action prescribed in *Bickel v. Burkhart,* 632 F.2d 1251 (5th Cir.1980), where the employee kept his job in the face of a retaliatory personnel action so as to mitigate damages, all while bringing suit to press his legal claim. To allow the district court's ruling denying back pay to stand would be to require persons who suffer from retaliatory personnel actions short of discharge (e.g., transfer, demotion, reassignment) to resign or forfeit an award of back pay. Such a result is short-sighted and needlessly harsh. An award of back pay is required when an adverse personnel action instituted for constitutionally impermissible reasons results in a loss of wages, regardless of whether the employee "accepted" the payments received in the demotion.

■ Reinstatement is also normally an integral part of the remedy for a constitutionally impermissible employment action. *Bueno v. City of Donna,* 714 F.2d 484, 495 (5th Cir.1983) (discharge); *Bickel v. Burkhart,* 632 F.2d 1251 (5th Cir.1980) (denial of promotion); *McGill v. Board of Education,* 602 F.2d 774 (7th Cir.1979) (transfer). Although reinstatement is not "absolute and automatic," it is clear that "once the plaintiff establishes that his discharge resulted from constitutionally impermissible motives, he is *presumed* to be entitled to reinstatement." *P.A.C.E. v. El Paso County Comm. College Dist.,* 730 F.2d 258, 268 (5th Cir.1984).

■ The district court gave two reasons for denying appellant the preferred remedy of reinstatement. First, the court found that a successor to Mrs. Reeves had been hired during the course of litigation.

---

8. Counsel for Noble represented at oral argument that Reeves' salary of $30,424.00 "would have been reduced [approximately $4,000.00] regardless of whether or not she had been re-tained as the Chapter I Coordinator." We find no evidence in the record which supports counsel's argument that the Board cut salaries about $4,000.00 "across the board."

We find this justification for denying reinstatement unpersuasive. If the existence of a replacement constituted a complete defense against reinstatement, then reinstatement could be effectively blocked in every case merely by hiring an innocent third party after the retaliatory purpose was achieved. Thus, the deterrent effect of the remedy of reinstatement would be rendered a nullity. *See Allen v. Autauga County Board of Education,* 685 F.2d 1302, 1306 (11th Cir.1982). While reinstatement may displace an innocent employee, the "[e]nforcement of constitutional rights [may have] disturbing consequences. Relief is not restricted to that which would be pleasing and free of irritation." *Sturzing v. Fort Bend Ind. School Dist.,* 496 F.2d 92, 93 (5th Cir.1974); *Bueno v. City of Donna, supra,* 714 F.2d at 496. The second rationale advanced in refusing reinstatement was that Dr. Noble's recommendation to transfer Reeves was only *partly* motivated by constitutionally impermissible considerations. Yet the district court's findings of fact clearly state that *but for* Noble's recommendation to the Board to reassign appellant, no transfer would have occurred. To deny reinstatement because Noble voiced other reasons to transfer Reeves in order to convince the Board to approve her reassignment would give credence to deception. The district court found that Dr. Noble's action recommending a mid-year transfer of Mrs. Reeves into a wholly unsuitable office space (the home economics kitchen) with no job description or administrative cooperation was "an improper and retaliatory response to her testimony in the *Holloway* matter." The district court also found that Noble failed to establish he would have ,recommended Reeves' transfer notwithstanding her testimony in *Holloway.* The failure to order reinstatement on these facts is clearly erroneous.

### Qualified Immunity

The district court absolved the Board and its constituent members of both official and individual liability. Finding of Fact 16 states:

> The individual members of the Board of Education did not know of Reeves' participation in the *Holloway* trial at the time of her transfer. They were not motivated by the fact that she testified in the trial. They acted upon the recommendation of Superintendent Noble and their proper evaluation of a need to improve the overall reading program by the appointment of an overall supervisor to it.

Superintendent Noble voiced his concern over the declining reading skills of the students and the school system's lack of accreditation by the State of Mississippi. These were legitimate concerns of the school board. Reeves still urges us to find the Board members individually liable, but the district court's decision that the Board and its members should not be held individually liable is far from clearly erroneous.

Appellant also urges us to find the Board officially liable as an entity which acquiesced in Superintendent Noble's unlawful action. According to Reeves, if the Board delegated its policymaking role to Superintendent Noble, then Dr. Noble's retaliation, as the official policy of the Board, constitutes an action of the Board for Section 1983 purposes. This argument has some support in the law. *Neubauer v. City of McAllen,* 766 F.2d 1567, 1573–74 (5th Cir.1985) (governmental entity liable under Section 1983 "where the policy was made by an official to whom the governing body had given policymaking authority"); *P.A.C.E. v. El Paso, supra,* 730 F.2d at 266 n. 14; *see also Saye v. St. Vrain Valley School Dist.,* 785 F.2d 862, 867 (10th Cir. 1986). Yet the record does not reflect whether the Board's policy or custom was to defer to the Superintendent, and the district court did not consider this when passing on the case. Therefore, we decline to decide this issue in the present posture of this case. The district court will be in a better position on remand to evaluate whether Noble's actions and recommendations in fact constitute official Board policy.

We do agree with the district court's decision that Noble should, at the very least, have been "made to hesitate" for retaliating against an employee who testified about the process in which other employees were themselves fired due to their

exercise of first amendment rights. It is "clearly established" that a government employer cannot retaliate against an employee for the exercise of first amendment rights. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Even under an "objective (albeit fact-specific)" view of this case, in-court testimony in this Circuit has been accorded first amendment protection. *Cf. Anderson v. Creighton,* — U.S. —, —, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987).

### Conclusion

We uphold the district court's careful analysis of Reeves' claim under the *Mt. Healthy* standard and AFFIRM the decision holding Noble liable for retaliation against appellant for the exercise of her first amendment rights. We REVERSE the district court's decision to deny the preferred remedy of back pay and reinstatement and REMAND for further proceedings to award appellant the appropriate remedy and for a decision whether the Board is officially liable for Noble's recommendation of Reeves' transfer.

AFFIRMED in part, REVERSED in part and REMANDED.