**Darrell BENEDICT, Plaintiff,**

v.

**TOWN OF NEWBURGH, Town of Newburgh Town Board, George Bucci, Jr., Supervisor, Town of Newburgh, Nancy W. LaCola, Robert Petrillo, and Sal DeCrosta, sued in their individual capacities, Defendants.**

**No. 00 Civ. 0377 (CLB).**

United States District Court, S.D. New York.

April 11, 2000.

Michael H. Sussman, Law Offices of Michael H. Sussman, Goshen, NY, for plaintiff.

Thomas J. Kavaler, Cahill Gordon & Reindel, New York City, for defendants.

MEMORANDUM & ORDER

BRIEANT, District Judge.

By motion filed February 29, 2000, heard and fully submitted on April 7, 2000,

Defendants, in this action pursuant to 42 U.S.C. § 1983 for violation of civil rights, move pursuant to Rule 12(b)(6) Fed. R.Civ.P. to dismiss the complaint for failure to state a claim or in the alternative to dismiss the complaint against defendants George P. Bucci, Jr., Nancy W. LaColla,[1] Robert J. Petrillo and Salvatore DeCrosta ("Individual Defendants") on the ground of qualified immunity. Plaintiff filed opposition papers on March 21, 2000. Defendants filed reply papers on March 29, 2000. Counsel for both sides have eschewed the Court's suggestion that it would treat the motion to dismiss as a motion for summary judgment pursuant to Rule 56, Fed. R.Civ.P. They point out that all the papers and pleadings rely only on information in the public record or referred to in the complaint as amplified on oral argument by Plaintiff's attorney.

The following well pleaded facts are assumed true for purposes of this motion. Plaintiff Darrell Benedict is a resident of the Town of Newburgh ("Town" or "Newburgh"). Plaintiff had been appointed by the Town Board of the Town of Newburgh to his fourth two-year term as Town Highway Superintendent for Newburgh expiring December 31, 1999. The Town of Newburgh is governed by an elected Town Board consisting of four Town Councilmen and the Town Supervisor ("Town Board"). Defendant George Bucci, Jr. is the Supervisor. Defendants Nancy W. LaColla, Robert Petrillo and Salvatore DeCrosta are Councilmen. Councilman Robert A. Kunkel has not been sued.

On June 3, 1999, Plaintiff testified as a non-party witness in the federal civil jury trial of a lawsuit brought in this Court by Gerald Williams, one of Plaintiff's subordinates, against the Town, the Town Board and Defendant Bucci. *Williams v. Town of Newburgh,* 97 Civ. 4893(CLB). On March 10, 1998, Benedict had been deposed in *Williams.* In that litigation, Mr. Williams claimed that the Defendants had denied him promotion within the Highway

Department because his wife, who regularly attended public meetings of the Town Board, engaged in protected speech offensive to Defendant Bucci. Plaintiff's testimony in *Williams* concerned the duties and responsibilities of the position Mr. Williams was seeking and the background, experience and qualifications of the four candidates for this position. Plaintiff also testified about the methods by which he recommended qualified individuals to the Town Board for promotion. The *Williams* case settled at trial, after Mr. Benedict had testified. Plaintiff alleges that Bucci and at least one other Town Board member, were "furious at him" for his testimony. Complaint at ¶ 12.

Thereafter, on December 2, 1999, while on duty, Plaintiff shot and killed a large deer at the Town Highway Department. Plaintiff caused or permitted his subordinates to clean the deer and place it in the truck. Plaintiff was charged with firing his rifle within 500 feet of a dwelling house in violation of § 11–0931, ¶ 4(2) of the New York Environmental Conservation Law. This charge has not yet been adjudicated. He also violated Town Board Directives against carrying a weapon in a town truck, and carrying a weapon while on duty.

By letter dated December 3, 1999, Supervisor Bucci suspended Plaintiff without pay pending the Town Board's determination if it would take any "additional actions regarding this matter."By letter dated December 17, 1999, addressed to Plaintiff, the Town Supervisor outlined claims of misconduct arising out of the deer shooting incident, which the Town Board believed required termination of Plaintiff's employment, and requested a written response. Ex. 3 to Kavaler Aff. The charges included: (1) Storing a rifle in a Town truck assigned to Plaintiff for purposes of performing official duties; (2) Firing the rifle while on duty, while on Town property and while in front of subordinates; (3) Firing the rifle in the within 500 feet of a residen-

---

1. Sued incorrectly as Nancy W. LaCola.

tial dwelling; (4) Firing the rifle in violation of the State Environmental Conservation Law by firing within 500 feet of a dwelling house; (5) Killing a deer on town property and within 500 feet of a residential building; (6) Killing a deer in violation of the State Environmental Conservation Law by failing to comply with mandatory tag requirements; (7) Storing a rifle in a Town vehicle in violation of a May 20, 1993, Town Board Directive; (8) permitting or directing subordinates who were on duty to place the deer in Plaintiff's Town truck; and (9) permitting or directing subordinates who were on duty to assist in cleaning the deer.

By letter dated December 27, 1999, Plaintiff responded to the charges through counsel. Plaintiff did not deny that he had shot the deer while on duty. Nor did he deny that he had carried the gun in his Town vehicle. Plaintiff claimed that Defendants' charges were pretextual, and that the true motive was retaliation for his testimony in *Williams*.[2] Plaintiff stated that the town directives had not been enforced against other employees who carried firearms at their work sites. The letter requested that the Town Board consider a "measured response to Mr. Benedict's action," rather than termination. Ex. 6 to Kavaler Aff.

At a meeting held December 29, 1999, defendant Town Board terminated Plaintiff's employment two days short of the expiration of his term of office. The Town Board also elected not to reappoint Plaintiff as Highway Superintendent on December 31, 1999, when Plaintiff's term would have expired. The stated grounds for Plaintiff's termination were the "matters communicated to you in [the Town Board's] letter dated December 17, 1999." Ex. 7 to Kavaler Aff. Plaintiff claims that Defendants actually terminated him in retaliation for the testimony given in *Williams*, and that the stated reasons are

pretextual. Plaintiff also alleges that but for his testimony in *Williams*, he would have been reappointed on December 31, 1999. We are told that Plaintiff has evidence of such hostility, by admissions of one or more participants.

Although not presently pleaded in the complaint, Benedict's discharge was arguably *ultra vires* under New York law and therefore unlawful. See § 36 of the New York Public Officers Law which places the power of removal from office of a town officer for any misconduct exclusively within the jurisdiction of the Appellate Division of the New York Supreme Court. A Superintendent of Highways of a town has been held to be a town officer within that section. *Matter of Phillips v. Dally*, 143 A.D.2d 273, 532 N.Y.S.2d 32 (2d Dept. 1988). Plaintiff did argue at the hearing on this motion that the precipitous and unlawful manner in which defendants reacted to the killing of Bambi was some evidence of malice on their part, traceable to Benedict's testimony in the *Williams* case.

Plaintiff commenced this action on January 19, 2000, seeking to recover damages for lost income, emotional distress, punitive damages and reinstatement.

In order to plead a *prima facie* § 1983 claim for First Amendment retaliation, Plaintiff must establish that:

(1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination.

*Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999). Plaintiff has suffered an adverse employment action, his termination.

This Court may dismiss a complaint under Rule 12(b)(6) for failure to state a

---

**2.** The letter also claims that the action was in retaliation for Plaintiff's support of a candidate for Town Clerk and a disagreement with

a councilman over a highway project. Neither of these motivations are claimed in the lawsuit. *See* Ex. 6 to Kavaler Aff.

claim only if it appears beyond doubt that the Plaintiff can prove no set of facts supporting his claim that entitles him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The motion is addressed to the face of the pleading and the allegations in the complaint must be treated as true, and construed most favorably to the Plaintiff.

This issue was originally tendered to the Court by Defendants as a standard case alleging retaliation against speech by a public employee. The broad freedom of speech granted by the First Amendment has been subjected to limitations by the Supreme Court and our Court of Appeals in the case of government employees. In *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Court removed as to public employees any Constitutional protection from "personnel decisions taken by a public agency allegedly in reaction to an employee's behavior," where the "employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." (*Connick* at 147, 103 S.Ct. 1684). The Court went on to advise:

> To presume that all matters which transpire within a Government office are of public concern would mean that virtually every remark — and certainly every criticism directed at a public official—would plant the seed of a Constitutional case ... The First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

Cases following *Connick* have held that it is an issue of law to be decided by the Court whether the speech by the employee against whom retaliation was allegedly taken is upon a matter of public concern or merely upon a matter of personal interest.

Defendants take the position that the deposition and trial testimony in the *Williams* lawsuit, pertaining the Williams non-promotion is not speech on a matter of public concern, and that Plaintiff's speech was of concern only to Mr. Williams, the individual aggrieved by the failure to promote him, and possibly also of concern to plaintiff Benedict, whose recommendation as to promotion was disregarded in a manner contrary to standard practice in the Town.

This Court perceives the validity of the argument made so far. But, it seems clear to this Court that the right to testify truthfully before any tribunal, including particularly a federal district court, is a protected Constitutional right wholly apart from the right under the First Amendment to sound off in the public square or at a meeting about matters of public concern without fear of retribution at the hands of a municipal employer.

This issue has arisen for the most part in criminal cases brought under §§ 241 and 242 of Title 18 of the United States Code, which are an analog to § 1983. The criminal statute, which is generally construed *in pari materia* with § 1983 was considered by our Court of Appeals in *United States v. Pacelli*, 491 F.2d at 1108, 1113–15 (2d Cir.1974), where the court held unequivocally that the right to be a witness of a federal trial is a civil right secured by the Constitution and protected from infringement or deprivation by § 241. Once the right to testify truthfully has been determined to be a right secured by the Constitution and protected under 18 U.S.C. § 241, it is *a fortiori* within § 1983. This issue was considered again in a criminal context in *United States v. Guillette*, 547 F.2d 743, 748 (2d Cir.1976) in which the court held:

> This court in *United States v. Pacelli*, 491 F.2d 1108, 1113–15 (2d Cir.1974) held unequivocally that the right to be a witness in a federal trial is a civil right secured by the Constitution and protected from infringement or deprivation by § 241 ... We adhere to our holding in that decision ...

In *Pacelli* our Court of Appeals held:

> "The Supreme Court has long made clear that certain rights are implicitly

conferred by the Constitution's establishment of a national Government intended to be 'paramount and supreme within its sphere of action.' ... (Citation omitted) One of these is the right to testify at a federal trial at response to the request or command of a federal district court. Our federal government has a particular interest in assuring a prospective witness that he or she will be free to respond by attending the trial of a federal indictment as a witness without being prevented from doing so by threats, molestation or force. Otherwise, the foundations of federal justice would be undermined." (*Pacelli* at 1113)

Our Court of Appeals in *Pacelli* cited with approval *Foss v. United States*, 266 F. 881 (9th Cir.1920) as supporting the claim that the right to testify as a witness is secured by the Constitution or laws of the United States, without regard to the First Amendment. *Foss* involved a prosecution for murder of a witness because he had "been subpoenaed and intended to appear before the United States Commissioner in a contest between Carl E. Foss and the United States in the United States Land Office," a civil litigation to try title to real property. The Ninth Circuit held that "the right in question does not depend upon any of the amendments to the Constitution but arises out of the creation ... of a national government, paramount and supreme within its sphere of action." Obviously, in light of *Foss*, no principled difference can be suggested between the right to testify as a witness in a criminal prosecution and the night to testify in a civil lawsuit.

Since the right to testify has a source in the Constitution independent of the First Amendment, logic would suggest that the right to testify truthfully is not encumbered with the content limitations which have been grafted by the Supreme Court and others onto the First Amendment protection accorded to non-testimonial voluntary speech. However, Defendants cite to some reported decisions which seem to suggest that there exists the same *Connick* restriction on content insofar as concerns witnesses, and that their testimony must also relate to a matter of public concern. We are cited to *Phelan v. Corning*, 568 F.Supp. 904 (N.D.N.Y.1983) decided by then District Judge Miner. Phelan, who was a Deputy Commissioner of Public Works for the City of Albany, testified at a disciplinary hearing brought under New York Civil Service Law § 75, against a Public Works Department employee for unauthorized absence from work. He claimed that his subsequent discharge constituted retaliation for .the testimony he gave at the Civil Service hearing. While recognizing that "it is the duty of every person to testify before a duly constituted tribunal unless a valid legal exemption is involved," the district court held that the testimony was not protected by First Amendment privilege because it did not relate to a matter of public concern. The court also held that the testimony at the Civil Service hearing was not a substantial or motivating factor in Plaintiffs' discharge, which relegates the prior ruling to the realm of *dictum.*

Subsequent Second Circuit learning is no more clear than *Phelan.* In *Kaluczky v. City of White Plains,* 57 F.3d 202 (2d Cir.1995), plaintiff, a personnel officer of the City of White Plains, testified at a disciplinary hearing resulting in the discharge of a city employee for having assaulted the mayor. Plaintiff alleged that in retaliation, he was asked by the mayor's successor, a political ally of the assailant, to resign, and that he was excluded or prevented from conducting most of the work relating to his office. The court in *Kaluczky* upheld in clear terms and without limitation as to content, the right of a public servant to testify without retaliation, as follows:

Voluntarily appearing as a witness in a public proceeding or a lawsuit is a kind of speech that is protected by the First Amendment. See *Piesco v. City of New York,* 933 F.2d 1149, 1158 (2d Cir.1991),

*Bates v. Hunt,* 3 F.3d at 374, 377 (11th Cir.1993).

There are evident policy reasons for encouraging truthful testimony and for insulating witnesses from retribution or the threat of retribution. *See Piesco,* 933 F.2d at 1160 (recognizing the risks of being fired for truthful testimony, committing perjury, or being held in contempt for refusal to testify).

*Kaluczky* may be read to support absolute First Amendment protection to a person voluntarily appearing as a witness, subject to the possibility that a policymaker witness could be discharged for aiding a co-employee's civil lawsuit. The case is distinguishable because *Kaluczky* was treated by the court as a policymaker, which Darrell Benedict clearly is not, and the Court of Appeals held subsequently at p. 210 of *Kaluczky* that:

> In this case (I) the truthful-testimony issue is cast in particularly narrow terms: whether Kaluczky's truthful testimony, and whatever incremental hostility that provoked, served to reinforce the First Amendment rights that are weakened by Kaluczky's role as a policymaker. We conclude that the First Amendment does not prevent Kaluczky's political opponents from seeking to weaken and isolate him, whether or not Kaluczky's truthful testimony is yet another source of hostility between them. The First Amendment will not compel the defendants to take Kaluczky into their counsels, or even to speak with him.

> We need not decide whether a policymaker (particularly one holding a tenure position) may be fired or his salary docked for voluntarily or involuntarily giving truthful testimony under oath. Kaluczky was not fired, nor was his salary reduced.

In *Piesco v. City of New York,* 933 F.2d 1149 (2d Cir.1991) relied on in *Kaluczky* for the principle that truthful testimony as a witness is protected by the Constitution without regard to content, plaintiff, a city official testified before a state legislative committee investigating the civil service tests. Dr. Piesco gave her sworn professional opinion testimony that a "functional illiterate" could pass the entrance examination to the police academy at the pass mark then set. She was fired in retaliation for having done so. The court treated the interest in testifying truthfully before the legislative committee as being subject to the *Pickering* balancing test. While reversing summary judgment granted by the district court, the *Piesco* opinion seems to limit the privilege to testify to matters of public concern, which was all that was before the court. It thus appears that the *Kaluczky* case is uncertain authority for an absolute privilege since it relies on *Piesco* and involved the status of a policymaker, who in any event had. not suffered material harm to his job status as a result of the retaliation.

■ As observed earlier, the right of a public servant to testify is in a different order than the mere right to blab off in the marketplace. As to the latter, the current case law seems to be that the content of the speech must pertain to something more than a mere personal dispute with the municipal employer before it attains Constitutional protection. No principled basis is found or suggested to treat *testimony* under oath as protected or unprotected depending upon its content, or to equate such compelled speech with voluntary speech in a public forum. The Court of Appeals of the Third Circuit recently considered the issue in *Pro v. Donatucci,* 81 F.3d 1283 (3rd Cir.1996). In that case, a secretary in the office of the Clerk of the Orphans' Court of Philadelphia County was subpoenaed by the wife of the Register of Wills to testify in her divorce action. She appeared in court pursuant to the subpoena, but was not actually called as a witness. She was discharged and sued, claiming that she was fired in retaliation for activity protected by the First Amendment, that is, her appearance as a potential witness at the divorce proceeding, who

did not actually testify. The court was unable to determine the *content* of the testimony since none was given, but assumed that it did not relate to a matter of public concern. We adopt the reasoning of the Third Circuit, expressed by quoting with approval from *Reeves v. Claiborne County Bd. of Educ.*, 828 F.2d 1096, 1100 (5th Cir.1987):

> An individual's fear of official retribution could inhibit the willingness of the witness to testify truthfully. Not only would the first amendment right of the witness be infringed by this type of coercion, the judicial interest in attempting to resolve disputes by arriving at the truth would be in jeopardy. Furthermore, a witness who succumbed to any real or imagined coercion could also be subject to a charge of perjury. Of course, it is the duty of every person to testify truthfully before a duly constituted tribunal ... Yet, '[t]hese values, along with the first amendment values, would not be served' if the fear of retaliation and reprisal 'effectively muzzled' witnesses testifying in open court (citations omitted).

> The court [in *Reeves* ] went on to say that these principles lead to no meaningful distinction between testimony in a criminal proceeding and testimony in a civil proceeding, and that: "Our judicial system is designed to resolve disputes, to right wrongs. We encourage uninhibited testimony, under penalty of perjury, in an attempt to arrive at the truth." *Id.* The court thereafter upheld the district court's conclusion that Reeves had been discharged for exercising her right of free expression protected by the First Amendment.

*Pro* suggests that testimony is privileged in the Third Circuit without regard to content.[3] The rule in the Fifth Circuit appears to be the same. See also *John-*

*ston v. Harris County Flood Control Dist.*, 869 F.2d, 1565, 1578 (5th Cir.1989):

> When an employee testifies before an official government adjudicatory or factfinding body he speaks in a context that is inherently of public concern. "Our judicial system is designed to resolve disputes, to right wrongs. We encourage uninhibited testimony, under penalty of perjury, in an attempt to arrive at the truth." *Reeves v. Claiborne County Board of Education*, 828 F.2d 1096, 1100 (5th Cir.1987). We would compromise the integrity of the judicial process if we tolerated state retaliation for testimony that is damaging to the state. If employers were free to retaliate against employees who provide truthful, but damaging, testimony about their employers, they would force the employees to make a difficult choice. Employees either could testify truthfully and lose their jobs, or could lie to the tribunal and protect their job security. Those able to risk job security would suffer state-sponsored retaliation for speaking the truth before a body entrusted with the task of discovering the truth. *See Smith v. Hightower*, 693 F.2d 359, 368 (5th Cir.1982). Those unwilling or unable to risk unemployment would scuttle our efforts to arrive at the truth. *Reeves*, 828 F.2d at 1100. Thus, a grand jury witness speaks on matters of public concern when he furnishes truthful information to the grand jury on a matter that the grand jury properly is investigating. *Neubauer v. City of McAllen*, 766 F.2d 1567, 1572–73 n. 5 (5th Cir. 1985). Likewise, when one state employee testifies in another employee's civil action against their mutual state employer, the witness's testimony constitutes a matter of public concern for First Amendment purposes. *Reeves*, 828 F.2d at 1100–1101. *See also Smith*, 693 F.2d at 368 (holding that the First Amendment protects a witness's right to

---

**3.** The majority opinion asserts that it does not, but the dissent of Judge Roth confirms that this is so.

testify truthfully at a criminal trial.) The goal of grand jury proceedings, or criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth, a goal sufficiently important to render testimony given in these contexts speech "of public concern."

Like testimony before a grand jury and before a district court, Johnston's testimony before the Harris County Commissioner's Court constitutes speech on a matter of public concern. The Commissioner's Court was acting, as the district court explained, as fact finding body hearing an official matter. The purpose of the hearing was to resolve the Marilon Speed's employment dispute by gathering testimony and arriving at the truth. The Commissioner's Court, like the grand jury and the district court, has an important interest in the integrity of its fact finding process. If we were to permit HCFD to retaliate against employees who testify before the Commissioner's Court, we would chill the employees' willingness to testify freely and truthfully and would obstruct the Commissioner's court's path to the truth. Given the context in which Johnston spoke, his testimony constitutes speech on a matter of public concern and, thus, was entitled to First Amendment protection. As the speech is protected, it properly formed the basis of Johnston's § 1983 action.

In *Pro*, the Third Circuit quoted with approval the following distinction adopted by the district court:

The real issue after *Johnston* and *Reeves* is control. In the context of the workplace, a public employee can normally choose to speak, or not to speak, on issues that may incur the wrath of his superiors. A subpoenaed witness has no choice but to appear at trial, unless he is willing to risk a finding of contempt. Nor does the subpoenaed witness normally have a say in whether he will be called to testify. Retaliation in these circumstances inflicts a punishment on a public employee for performing an act that he could not choose to avoid. 81 F.3d at 1290.

Other authority exists to support the utilitarian view expressed in *Johnston*. See *Green v. Philadelphia Housing Authority*, 105 F.3d 882, 888 (3d Cir.1997) (voluntary appearance to testify at a bail hearing, no testimony given—court held that "all court appearances are matters of public concern."); Cf. *Hansen v. Soldenwagner*, 19 F.3d 573 (11th Cir.1994) (right not clearly established in 1994 for purposes of qualified immunity).

■ In conclusion, this Court now confronts an issue of apparent first impression in this Circuit, informed by *Kaluczky*, which suggests testimony is protected without regard to content, itself citing *Piesco* as authority, where content was deemed relevant. While there is no Second Circuit authority directly on point, except for *Pacelli*, decided in a criminal context, faced with this case as one of first impression our Court of Appeals would follow the Third and Fifth Circuit, holding on utilitarian grounds that testifying truthfully is constitutionally protected from retaliation, and that it is a right existing wholly apart from the First Amendment protection of speech generally, and without the need to show that the testimony relates to a matter of public concern. Alternatively, it could be held that all testimony which is truthful and responsive relates to a matter of public concern, or it would not be in court.

The complaint in this case as amplified does state a claim upon which relief may be granted.

### Qualified Immunity

It is inappropriate to resolve the issue of qualified immunity at this stage of the litigation. The issue appears to be somewhat fact intensive. Equitable relief is presently sought and there may well be a claim asserted in the litigation for denial of

due process as a result of intentionally flouting § 26 of the New York Public Officers Law while depriving Plaintiff of his job. As to such a claim, no qualified immunity would appear to exist.. That portion of the motion is denied with leave to renew after the pleadings are closed and pretrial discovery has been concluded.

## CONCLUSION

The motion to dismiss is denied. Recognizing that the issue is not free from doubt in this Circuit, this Court finds that its Order denying Defendants' motion involves a controlling question of law as to which reasonable attorneys can and do differ and that an immediate appeal from this order may advance materially the ultimate termination of the litigation. See 28 U.S.C. § 1292(b). If such an appeal is taken, and accepted by the Court of Appeals, this Court will stay discovery pending resolution of such interlocutory appeal.

SO ORDERED.