■ CANNON POINT NORTH, INC., Appellant-Respondent, v CITY OF NEW YORK et al., Respondents-Appellants, et al., Defendant. CANNON POINT NORTH, INC., Appellant, v CITY OF NEW YORK et al., Respondents, et al., Defendant. CANNON POINT SOUTH, INC., Appellant, v CITY OF NEW YORK et al., Respondents. CANNON POINT SOUTH, INC., Appellant-Respondent, v CITY OF NEW YORK et al., Respondents-Appellants. [928 NYS2d 711]—

Plaintiffs Cannon Point North, Inc. and Cannon Point South, Inc. are the owners of apartment buildings located respectively at 25 and 45 Sutton Place South. Part of the buildings rest upon a platform above FDR Drive between East 54th Street and East 56th Street. The platform consists of two horizontal concrete slabs and steel columns encased in concrete; the upper slab forms the bottom of the buildings, while the lower slab forms the ceiling over FDR Drive. This structure allows the buildings to sit atop FDR Drive with vehicular traffic passing underneath.

At issue in these actions, consolidated for appeal, is whether the City or plaintiffs are responsible for maintenance and repair of the structure.[1] In 2002 and 2003, inspections uncovered cracks in the concrete above FDR Drive and below the buildings, which posed a danger of concrete falling onto passing vehicles. In August 2003, the New York City Department of Buildings issued an emergency declaration, informing plaintiffs that unless they took immediate action to abate the violation, the City would perform the work and bill them. Because plaintiffs did not correct the condition, the City hired contractors who performed the repairs between January and February 2004.

In April 2005, the New York City Department of Transporta-

---

1. In an earlier appeal, this Court concluded that CPN is the owner of the understructure of its building, including the supporting columns (*Cannon Point N., Inc. v City of New York*, 46 AD3d 146, 154 [2007]). The Court, however, found issues of fact as to who is responsible for maintenance and repair (*id.*). Although not a party to that appeal, CPS agrees that it is bound by the Court's decision in that case.

tion issued another emergency declaration, which warned that the continued deterioration of the buildings' understructure constitutes an emergency condition in need of immediate repair and is a threat to public safety. The declaration stated that despite prior emergency repairs performed by the City, the structure would present a hazard to the public until comprehensive repairs were made. In 2005 and 2006, the City retained an engineering firm and construction contractor to inspect and repair the structure; the work was performed in 2006 and 2007. These contracts were awarded through the City's emergency procurement rules thus bypassing the normal competitive bidding process.

Plaintiffs brought these actions alleging, inter alia, violations of due process, wrongful taking, trespass and breach of contract. Plaintiffs also sought declaratory relief, including declarations that the contracts entered into pursuant to the 2005 emergency declaration were illegal, and that plaintiffs are entitled to perform repairs and maintenance during the usual business hours of the day, when no overtime would be charged. The City asserted counterclaims, including one seeking recoupment of the costs to repair the structure. Plaintiffs asserted various affirmative defenses, one of which averred that because the repair contracts were illegal, the City could not seek reimbursement. All parties moved for summary judgment and the motion court granted the motions in part and denied them in part. These appeals followed.

Plaintiffs seek summary judgment dismissing the City's counterclaim for recoupment of the costs of repairs made pursuant to the 2005 emergency declaration. Plaintiffs maintain that the contracts entered into between the City and its contractors were illegal because the City violated procurement procedures requiring competitive bidding. Since the contracts were illegal, plaintiffs argue, the City cannot recover any of the funds spent on the repairs. The City opposes summary judgment and contends that emergency procurements were necessary due to the dangerous condition of the structures.[2]

Plaintiffs maintain there was no emergency sufficient to circumvent competitive bidding. In support, plaintiffs point to evidence that the City was aware of the progressive deterioration of the understructure long before the emergency contracts were entered into. Plaintiffs also note that although the emergency was declared in 2005, the repair work did not begin until the following year. In response, the City submitted affidavits

---

2. The City does not seek summary judgment in its favor on these counterclaims.

showing that it had ample reason to believe that the matter presented a danger to the public and needed repair as quickly as possible. There was evidence in the record that the failure to replace the concrete likely would lead to greater deterioration, creating a high probability of danger to motorists traveling on FDR Drive. In addition, the City contends that the remedial work here was complicated and would have required multiple procurements to obtain engineering services and a construction contractor, leading to further delay.

In light of the interests at stake—not only property but also life and safety—we conclude that the record below presents issues of fact as to whether an emergency existed and whether the scope of the work performed was necessary to remediate the emergency (*see e.g. Matter of 4M Holding Co. v Diamante*, 215 AD2d 383, 384 [1995] [town did not improperly bypass competitive bidding procedures where an urgent health and safety hazard existed on the petitioner's property]). Because of these issues of fact, we need not decide whether, if the contracts were illegal, the City would be barred from seeking any reimbursement at all.[3]

The claim alleging that the emergency declaration procedures violate due process on their face was properly dismissed. Likewise, the court was correct in dismissing the substantive due process claims. To succeed on a substantive due process claim, a plaintiff must demonstrate that the challenged action was "arbitrary, conscience-shocking, or oppressive in a constitutional sense," rather than merely "incorrect or ill-advised" (*Kaluczky v City of White Plains*, 57 F3d 202, 211 [2d Cir 1995] [internal quotation marks omitted]). The City's actions in this case do not rise to that level. Even if the condition of the concrete did not create an emergency sufficient to bypass the necessity for competitive bidding, there is no dispute that the understructure was, in fact, in poor condition and in need of repair. Thus, the record presents no genuine issue of fact on whether the City's actions were arbitrary or shocking to the conscience (*see Catanzaro v Weiden*, 188 F3d 56, 64 [2d Cir 1999]).

Plaintiffs also assert that the actions taken by the City pursuant to the 2003 and 2005 emergency declarations violated due

---

**3.** Those causes of action seeking a declaratory judgment that the contracts entered into pursuant to the 2005 emergency declaration were illegal were properly dismissed on statute of limitations grounds. Plaintiffs' complaints were brought long after the four-month period for challenging the City's decision to award the contracts (*see* CPLR 217), and plaintiffs have failed to show that the claims relate back to earlier complaints.

process as applied and constituted a wrongful taking of property. The motion court properly found that, to the extent these causes of action arise from the 2003 declaration, they are time-barred.[4] There is no merit to plaintiffs' contention that the claims relate back to earlier complaints. Nor have plaintiffs sufficiently alleged a continuing pattern of activity so as to toll the statute of limitations. Neither plaintiffs nor the City is entitled to summary judgment on these causes of action to the extent they relate to the 2005 emergency declaration. For the reasons stated earlier, issues of fact exist as to whether the City properly exercised its emergency powers.

The motion court correctly found that, under the relevant agreements, plaintiffs have the right to perform repairs and maintenance during the usual business hours of the day, when no overtime would be charged. The court, however, denied plaintiffs' cross motions for summary judgment so declaring. Thus, we modify to grant the cross motions in part and to declare accordingly. We find the City's argument on this issue unpersuasive. The agreements are clear (see W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162-163 [1990]).

By separate motions, each plaintiff moved to strike the City's demand for a jury trial on its counterclaims and plaintiffs' main claims. The City's first counterclaim seeks a declaratory judgment that plaintiffs are the owner of the understructure. The second counterclaim seeks a declaration that plaintiffs are responsible for the maintenance and repair of the understructure. The third counterclaim is for money damages and seeks recoupment of the costs to repair the understructure. The motion court found that the City had waived a jury trial on these three counterclaims.[5]

The motion court should have granted plaintiffs' motions to strike the City's jury demand on the main legal claims. "[W]here [a] plaintiff brings a claim triable by jury and the defendant asserts a related counterclaim not triable by jury, defendant thereby waives a jury trial in all respects, including on the main claim" (Hudson View II Assoc. v Gooden, 222 AD2d 163, 167 [1996]). The motion court applied an incorrect standard in determining that the City's counterclaims were not related to the main legal claims. The test is not whether the equitable counterclaims are inconsistent with plaintiffs' claims, but rather, whether they arise from the same alleged wrong as the legal claims (see Zimmer-Masiello, Inc. v Zimmer, Inc., 164 AD2d

---

4. The City does not assert that the statute of limitations bars the claims insofar as they relate to the 2005 declaration.

5. The City has not appealed from the motion court's ruling on this issue.

845, 846 [1990]). Here, the City's counterclaims, which seek a declaration as to ownership and maintenance responsibilities, are related to and arise from the same transactions as plaintiffs' remaining causes of action. Plaintiffs' claims and the counterclaims, some of which are equitable in nature, all arise out of the 1941 and 1957 agreements and the repairs undertaken by the City. For example, plaintiffs' contention that the City trespassed and wrongfully took their property cannot be separated from the City's counterclaims that plaintiffs own the property and must maintain it. Thus, because the City has asserted counterclaims that arise out of the same transaction as plaintiffs' main legal claims, it has waived its right to a jury trial on all claims.

We have considered the parties' remaining requests for affirmative relief and find them without merit. Concur—Andrias, J.P., Sweeny, Moskowitz, Renwick and Richter, JJ. **[Prior Case History: 2010 NY Slip Op 31632(U).]**

